### BAKER LAND AND TITLE COMPANY, Plaintiff-Appellee,

v.

### UNITED STATES of America, Defendant-Appellant.

### Nos. 11451, 11452.

United States Court of Appeals Seventh Circuit.

April 4, 1956.

H. Brian Holland, Asst. Atty. Gen., S. Dee Hanson, Atty., U. S. Dept. of Justice, Washington, D. C., George E. Rapp, U. S. Atty., Madison, Wis., Robert N. Anderson, Harry Baum, Dept. of Justice, Washington, D. C., for the United States.

Roy C. LaBudde, Milwaukee, Wis., Michael, Spohn, Best & Friedrich, Milwaukee, Wis., of counsel, for appellee.

Before DUFFY, Chief Judge, and MAJOR and FINNEGAN, Circuit Judges.

FINNEGAN, Circuit Judge.

Stipulated facts in a decision on a tax refund claim, reported as Baker Land & Title Co. v. United States, D.C.Wis.1954, 126 F.Supp. 561, underlie the judgment of $2342.15 entered for plaintiff-taxpayer-Baker. By its appeal the government crystallizes the core issue of whether this corporate taxpayer's distribution to its common stockholders, of its own common stock prior to March 1, 1913 is to be treated as a statutory distribution of earnings and profits thereby becoming includible in taxpayer's equity invested capital, within the reach of § 718(a) (3)

(A), Internal Revenue Code of 1939[1], when computing the excess profits tax credit for the fiscal year ended April 30, 1944. Following and adopting Owensboro Wagon Co. v. Commissioner, 6 Cir., 1954, 209 F.2d 617, the district judge held this taxpayer's 1911 stock dividend to be includible in its equity invested capital.

After the Sixth Circuit reversed the Tax Court's decision in Owensboro Wagon Co., Sept. 25, 1952, 18 T.C. 1107, the precise question was again presented to that tax tribunal in other cases. Because the Tax Court remained unpersuaded of any error in its original holding, the two cases of Geo. W. Ultch Lumber Co. v. Commissioner, 1953, 21 T.C. 382, and Stacey Mfg. Co.[2] v. Commissioner, July 19, 1955, 24 T.C. 703, were decided adversely to the respective taxpayers involved and consistent with the initial Owensboro decision. 18 T.C. 1107. Stacey Mfg. Co. v. Commissioner, 24 T.C. 703 is currently pending on appeal in the Sixth Circuit. A similar case, Richmond Hosiery Mills v. Commissioner, 1955, 14 T.C.M. 847 is on appeal in the Fifth Circuit.

Such a persistent course of decision by a specialized and technically experienced tribunal on the same question despite an adverse judicial holding, impels us to examine the rationale that had its genesis in the first Owensboro case. Far from abdicating our own judicial position, with respect to the Sixth Circuit, such a course is indispensable for an independent review of the case before us. Owensboro was an accrual basis Kentucky corporation taxpayer. The facts in the proceeding, involving deficiencies in excess-profits tax, before the Tax Court were stipulated. Framing and stating the issue before it, the Tax Court said the question was: "Whether petitioner (Owensboro) is entitled to include in its equity invested capital under section 718, I.R.C., the sum of $204,775 for distributions in stock made prior to March 1, 1913." 18 T.C. 1107. Owensboro paid out dividends pursuant to resolutions of its directors of its own common stock to its own common stockholders, in a series of pre-1913 distributions. At the time of each such distribution Owensboro's earnings and profits, after deductions for prior dividend payments, were in excess of the stock issued and cash paid in payment of the dividend. Owensboro's directors directed that the 1900 and 1901 distribution be paid out of earnings. The dividends distributed in 1898 and 1909 were paid out of Owensboro's earnings and profits. "The books of * * * (Owensboro) disclose a credit balance of $100,514.41 in its undivided profits on January 14, 1913, and no surplus, and a deficit of $190,639.36 in its undivided profits account at the close of November 31, 1941. Pursuant to authorizations of its stockholders and directors * * * (Owensboro), on December 1, 1941, wrote down its capital stock account from $396,687.50 to $175,000, and of the amount of $221,687.50 by which the account was reduced, credited $190,639.36 to undivided profits and $31,048.14 to capital surplus." 18 T.C. 1107, 1108. The amounts recorded after each distribution totaled $204,775 and this figure is the total transferred by Owensboro from its earning and profits account to its capital stock account before 1923. Consequently in its excess profit tax returns Owensboro included in

---

1. 26 U.S.C. § 718 (1952 ed.).

2. In Stacey Mfg. Co. v. Commissioner, 1955, 24 T.C. 703, the Tax Court declared:

"Our opinion in the Owensboro Wagon Co. case was reviewed by the full Court [Tax] and adopted without dissent. Our subsequent reversal by the Court of Appeals for the Sixth Circuit, the court to which this case will go if appealed, makes mandatory a reconsideration of the rationale employed by us in reaching our conclusion. * * * we have fully reconsidered the question in the light of, and with due regard for, the views expressed by the Court of Appeals * * *. After such study we remain unconvinced of any error in our position. Thus, in all good faith, we must reaffirm the position heretofore taken by us, and, with high respect for the honorable Court of Appeals decline to follow."

its computation of equity invested capital this amount, $204,775, for stock dividends paid prior to March 1, 1913. As we understand it, on several occasions prior to March 1, 1913, Owensboro debited its earnings and profits account with entries totalling $204,775 and credited its capital stock account by corresponding bookkeeping entries that also added up to $204,775. Each time these entries were made Owensboro issued common stock to its common stockholders. We are aware that Owensboro paid "a small amount of cash with each dividend." What Owensboro did, in substance and before 1913, reduced its retained earnings, by a bookkeeping entry transferring $204,775.00 to the account labeled capital stock. That entry decreased the figures reflecting money available for distribution to Owensboro's stockholders. Then by declaring a stock dividend of common on common, Owensboro simply changed the proprietary section of its balance sheet by increasing the capital account and decreasing the account in which accumulated earnings were recorded. In short, retained earnings were reduced in its book account and outstanding shares of capital stock were increased.

Stock dividends shaped themselves in obedience to business practices and needs sometime before modern federal tax law was first enacted. So that when Mr. Justice Holmes incisively remarked in Towne v. Eisner, 1918, 245 U.S. 418, 426, 38 S.Ct. 158, 159, 62 L.Ed. 372, that after a stock dividend "* * * the corporation is no poorer and the stockholder is no richer than they were before", he was describing accounting aspects.[3] Then in 1941 Owensboro reduced its capital stock account (which reflected both paid-in capital for stock originally issued plus the $202,687.50) and apportioned that figure between undivided profits and surplus. The earnings which had been earlier insulated against distribution to Owensboro shareholders were in part thus restored, by bookkeeping entry, to the undivided profits account. The respondent Commissioner refused to allow Owensboro to treat the $204,775 as equity invested capital for distributions in stock and respondent restored the $204,775 entry to Owensboro's account designated accumulated earnings and profits. Owensboro had earned profits before 1913 and in lieu of distributing them to shareholders retained the money and issued more common stock. Obviously in this state of affairs problems would arise when determining a corporate taxpayer's equity invested capital under § 718. The purpose of that section is "* * * to arrive at an amount which has direct relation to the capital employed in" a business. 18 T.C. 1107, 1108. Congress defined the terms to be used in the legal equation for resolving that problem. Owensboro contended that the stock dividends were includible under § 718(a) (3) (A) unless that sub-section was controlled by § 115(h).[4] This later section, Owensboro urged, was inapplicable to dividends paid prior to March 1, 1913. But that contention was not considered by the Tax Court. 18 T.C. 1107, 1109. Facing up to the statutory method laid down in § 718(a) (3) (A) and (a) (4) brought the Tax Court face to face with the question "whether distribution of a common on common prior to March 1, 1913, is considered a distribution of earnings and profits within the meaning of the statute." 18 T.C. 1107, 1110.[5]

---

3. "* * * a stock dividend does not, in fact, give rise to any change whatsoever in either the corporation's assets or its respective shareholders' proportionate interests therein." American Institute of Accountants, Accounting Research Bulletin, No. 11 Revised at page 101A (Nov. 1952).

4. Internal Revenue Code of 1939; 26 U.S.C. § 115 (1952 ed.).

5. "The respondent (Commissioner) having restored the full amount of the distribution to accumulated earnings, the question is of importance to petitioner only because of operating losses after March 1, 1913, which offset most of the earnings involved in the stock dividend controversy." Owensboro Wagon Co. v. Commissioner, 1952, 18 T.C. 1107, 1110.

Reaching the pith of the matter, as they viewed it, the Tax Court stated:

"Specifically petitioner (Owensboro) contends that the earnings and profits represented by the stock dividends were irrevocably transferred to capital and *took on the same status as original capital and were not available for distribution to stockholders without further lawful proceedings for a reduction in capital stock*. That they were *not irrevocably taken out* of their original character is shown by the restoration of $190,639.36 of the amount to undivided profits."[6]

Having committed, by bookkeeping entry, an amount of earnings to capital, Owensboro, in substance, was saying that its capital was increased and could not be thereafter reduced without "lawful proceedings." Just what these proceedings are is undisclosed, yet the Tax Court expressly noted that Owensboro, "* * * makes no contention that the issue here is controlled by state law." 18 T.C. 1107, 1110. In any event Congress, according to the Tax Court, provided its own applicable rules. Relying upon Eisner v. Macomber, 1920, 252 U.S. 189, 40 S.Ct. 189, 64 L.Ed. 521, and other cases, the Tax Court rejected Owensboro's contentions.

When reversing the Tax Court decision in the Owensboro case, the Sixth Circuit focused its sights on the statutory line of demarcation between February 28, 1913 and March 1, 1913 appearing in § 115, and the language found there reflecting taxability in terms of post-1913 phrasing. "The intent of Congress", the Sixth Circuit declared, "would seem to be clear to condition stock distributions in respect to their effect on earnings and profits in the light of the constitutional change and the statutes enacted under its authority." 209 F.2d 617, 619. It appears that the Sixth Circuit viewed the Owensboro stock dividends only within a pre-1913 perimeter. In that setting, and under Kentucky law, the amounts of stock dividends, the Court concluded, when capitalized ("and if not capitalized") represented invested capital quite apart from any federal tax laws. Since such dividends attained the status of "invested capital" before 1913, to now exclude them from equity invested capital would, by the Sixth Circuit's reasoning, expose Owensboro to a tax "laid indirectly upon pre-1913 earnings," to the extent that such exclusion leads to a computation of abnormal income on invested capital, id. 620; as an income tax, excess profits taxes were constitutionally defective prior to the enactment of the Sixteenth Amendment. Nor did the alternative tests prescribed by § 115 (h) (2) avail the Commissioner any sound argument since the Sixth Circuit adhered to their basic premise that Owensboro's stock dividends were originally free of Federal Tax "because (they were) made before any such tax could be imposed." 209 F.2d 617, 620. It thought those statutory tests were only applicable to post-1913 distributions. We are in accord with the rationale expressed in Owensboro Wagon Co. v. Commissioner, 6 Cir., 1954, 209 F.2d 617.

The question of law involved in Baker's appeal is essentially the same one decided by the Sixth Circuit in Owensboro. Yet in Baker's case the government is asking us to virtually adopt the theories worked out by the Tax Court when it disposed of Owensboro. But we are unpersuaded that Baker's dividend transaction, completed before alteration of organic law by the Sixteenth Amendment, should now form the basis for reversing the judgment appealed.

Baker's own common stock was used as a dividend to its common stockholders. Prior to May 26, 1911, Baker had earned surplus in excess of $60,909.87. Prior to 1940 its equity invested capital was $17,300, representing cash or property paid into the corporation by its shareholders. Baker's board of directors, by resolution, declared a stock dividend of $503,387 on the common stock issued and outstanding, common stock being Bak-

6. 1952, 18 T.C. 1107, 1110. Italics ours.

er's only class of capital stock. Pursuant to that resolution, $60,909.87 was transferred, on May 26, 1911, from Baker's earned surplus account to its then capital stock account. Baker's capital stock outstanding account has been at all times since May 26, 1911, and during its fiscal year ended April 30, 1944, no less than $78,209.87. It should be noticed that the paid in capital of $17,300, plus the $60,909.87 transferred for earned surplus equal that capital stock balance figure. On April 30, 1943 and April 30, 1944, Baker's books showed deficits in earned surplus of $56,798.32 and $50,-827.26, respectively. When Baker computed its excess profits tax credit, for the fiscal year ended April 30, 1944, under § 718 of the Revenue Act of 1939, it used and reported the figure of $78,-209.87. Upon an audit of Baker's income and excess profits tax return for the year involved, the Commissioner disallowed $60,909.87—the transfer entry from earned surplus underlying the 1911 common stock dividend. That action reduced Baker's excess profits tax credit down to that computed on the remaining equity invested capital of $17,300. This adjustment, and others, produced a deficiency which was paid by Baker and precipitated its claim filed below.

We point out that there is absent in the Baker facts any restoration of the transferred amount ($60,909.87) to the account from which it was taken, as contrasted with Owensboro's restoration in 1941 of $190,639.36 to undivided profits. It was, as we have already shown, this later aspect which was underscored by the Tax Court in the Owensboro case. 18 T.C. 1107, 1110. The corporate-taxpayer-Baker, issuer of common stock used for dividend purposes, acted well within the non-tax pre-1913 zone where its stock dividends remain immune to statutory tax interpretation.

Judgment of the district court is affirmed.

Affirmed.

MAJOR, Circuit Judge.
I concur in the result.