MARY DUERR, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 60960. Filed July 30, 1958.

*Lee S. Jones, Esq.*, for the petitioner.
*John J. Larkin, Esq.*, for the respondent.

Respondent determined a deficiency in income tax of petitioner for 1952 of $5,232.23. The issues to be resolved are (1) whether the receipt of "debentures" by petitioner from a corporation was essentially equivalent to a dividend, and (2) whether respondent's determination of the basis of petitioner's stock is erroneous.

### FINDINGS OF FACT.

Petitioner filed her Federal income tax return for 1952 with the district director of internal revenue at Louisville, Kentucky.

P. A. Vogel & Sons Company, hereafter referred to as Vogel, was incorporated in Kentucky in 1919 as a wholesale supplier of plumbing and heating equipment. Its original authorized capital consisted of 500 shares of common and 1,000 shares of preferred stock, each having a $100 par value. The preferred stockholders were to receive a preferred dividend of 6 per cent during the first 5 years of incorporation and 7 per cent each year thereafter.

On July 12, 1947, the articles of incorporation of Vogel were amended to provide a capitalization of $156,000, consisting of 710 shares of common and 850 shares of preferred stock, each with a par value of $100. The amended articles of incorporation provided that the common and preferred stock would share equally in voting rights and any division of profits or assets.

Prior to April 30, 1952, petitioner owned 141 shares of common stock as well as preferred stock of Vogel. She had received the stock on the death of her husband who died August 2, 1945. His estate filed no Federal estate tax return. The Kentucky inheritance tax return finally accepted for that estate valued 283 shares of Vogel preferred stock at $100 per share and 166 shares of common stock at $20 per share as of the date of death.

On April 30, 1952, petitioner, Anna Belle K. Bretz, and Charlotte Watson entered into the following contract with Richard F. Allgeier, Joseph S. Duerr, and Vogel:

THIS AGREEMENT made by, between and among RICHARD F. ALLGEIER, and JOSEPH S. DUERR, * * * parties of the first part, and ANNA BELLE K. BRETZ, MARY DUERR and CHARLOTTE WATSON, * * * parties of the second part, and * * * [Vogel] party of the third part.

Whereas, the foregoing parties are all the stockholders of * * * [Vogel], and the capital stock * * * is $156,000.00 consisting of 710 shares of common stock and 850 shares of preferred stock each having a par value of $100.

WITNESSETH: That for a valuable consideration * * * and in further consideration of the mutual convenants and conditions herein contained the parties hereto agree as follows, to-wit:

1. Parties of the first part * * * agree to purchase from the parties of the second part all common stock standing in second parties' names at $100.00 per share.

2. Parties of the second part agree to * * * deliver to the company the 708 shares of preferred stock standing in their names and in lieu thereof the company is hereby authorized and agrees to issue to the parties of the second part according to their interest $70,800.00 in debenture bonds and an additional $49,200.00 in debenture bonds in lieu of the accrued dividends due to second parties. Said bonds shall be payable * * * $12,000 per year over * * * ten years plus interest thereon at * * * 5% per annum * * * to be paid semi-annually.

3. The bonds shall be payable out of income only except in case of liquidation.

4. The transfer of securities * * * shall be made on May 1, 1952, or as soon thereafter as practicable.

Petitioner and the other parties to the agreement of April 30, 1952, completed the agreed transactions. Petitioner received $14,100 cash and $40,000 of debenture bonds.

On January 1, 1952, the earned surplus account of Vogel totaled $67,548.77. The earned surplus account reflects dividend payments on June 30, 1952, and November 12, 1952, to petitioner, Anna Belle K. Bretz, and Charlotte Watson totaling $2,090.91 and $49,200, respectively. Following these transactions, the surplus account totaled $16,257.86.

In her 1952 return, petitioner reported $696.97 as dividends received from Vogel. She also reported capital gains as follows:

| Kind of property | Date acquired | Date sold | Gross sales price | Cost or basis | Gain or loss |
|---|---|---|---|---|---|
| 236 shares P. A. Vogel & Sons preferred stock | 1948 | 1952 | $40,000 | $20,423.06 | $19,576.94 |
| 141 shares P. A. Vogel & Sons common stock | 1948 | 1952 | 14,100 | 12,201.91 | 1,898.09 |
| | | | | | 21,475.03 |

In his notice of deficiency, respondent treated $16,400 of the $40,000 of debenture bonds received by petitioner from Vogel as dividends. Respondent determined that 141 shares of common stock and 236 shares of preferred stock had a basis of $20 and $100 per share, respectively. He did not otherwise disturb petitioner's treatment of the common stock transaction.

The receipt by petitioner of $16,400 of debenture bonds issued by Vogel was essentially equivalent to a dividend.

Petitioner's basis, derived from the fair market value of Vogel common stock as of August 2, 1945, the date of death of petitioner's husband, was $20 per share.

OPPER, *Judge:*

*I.*

By the agreement of April 30, 1952, petitioner and the other two stockholders agreed to sell all of their common stock to two individuals and to surrender all of the preferred stock standing in their names, 708 shares, in return for securities labeled debenture bonds totaling $120,000 face value. Petitioner reported the difference between the basis of her one-third of the preferred shares and face value of one-third of the debenture bonds as long-term capital gain.

Respondent, in addition to reducing the basis of common shares as hereinafter discussed in the second issue, determined that $16,400 face value of debenture bonds was received by the petitioner in a manner essentially equivalent to the distribution of a taxable dividend. That determination finds factual support in that the debentures issued in excess of the par value of the preferred stock were to be "in lieu of the accrued dividends due," that there were accumulated earnings and profits adequate to cover such a distribution, and that the corporation charged those additional debentures to its surplus account in a manner appropriate to the payment of a dividend.

Petitioner's sole contention with respect to this issue is that by the agreement she disposed of her entire interest as a stockholder in Vogel and that therefore no dividend could arise from the transaction, citing *Carter Tiffany*, 16 T. C. 1443; *Giles E. Bullock*, 26 T. C. 276, affirmed per curiam (C. A. 2) 253 F. 2d 715. The principle of those decisions has no application to petitioner's situation which is wholly distinguishable.

The rule of the *Tiffany* case requires at least that the taxpayer in fact absolutely terminate all interest in the corporation and its operations. But here the preferred stock "redeemed" was in many respects comparable to the new securities she received from the corporation even though the latter were characterized as "debt." Although an amount of principal payable annually and a rate of "interest" prescribed may be characteristic of a bonded debt, the fact that the "bonds" were to be paid solely out of income indicates that in this case the holders were to share the risks of the enterprise. The securities delivered in exchange for the preferred stock more closely resemble redeemable preferred stock than debentures. *Jewel Tea Co. v. United States*, (C. A. 2) 90 F. 2d 451; *Universal Oil Products Co. v. Campbell*, (C. A. 7) 181 F. 2d 451, 476, certiorari denied 340 U. S. 850. In effect petitioner in 1952 gave up the voting rights which the old preferred had acquired, and received in return the restoration of dividend and liquidation preferences of the original preferred

which had been relinquished in the 1947 charter amendment in exchange for the voting rights.

Under these circumstances, petitioner cannot be said to have fully terminated her entire interest in the corporate enterprise, any more than if she had continued to retain the old preferred stock as it was before the 1947 amendment.

For all that appears dividends subsequent to 1947 were declared but not paid on the "preferred" stock previously owned by petitioner. This is the only assumption consistent with the reference to "accrued dividends due to" petitioner. If this was not the fact, then petitioner on whom the burden rests has failed to show it. A distribution, even in the securities of the corporation, in payment of the already existing corporate indebtedness so created is a taxable distribution, particularly where, as here, the effect is to reduce the surplus remaining for future distribution. *Lester Lumber Co.*, 14 T. C. 255; *Harry Makransky*, 35 B. T. A. 395. See *Geo. W. Ultch Lumber Co.*, 21 T. C. 382, 390. That being so, we are unable to approve petitioner's contention and accordingly affirm respondent's determination as to this issue.

## II.

In computing capital gains in her 1952 income tax return, petitioner used as the basis for her 141 shares of Vogel common stock about $86.54 per share. Respondent determined the basis of the common stock to be $20 per share. He based his determination on the amounts finally agreed to by the Kentucky State Department of Revenue and the executrix of the estate of petitioner's husband.

The parties agree that the fair market value of the stock as of the date of petitioner's acquisition, her husband's death, is her basis for the stock. Sec. 113 (a) (5), I. R. C. 1939. Regulations 118, section 39.113 (a) (5)–1 (c), provides that where no Federal estate tax return has been filed, the value of property transmitted at death as appraised for State inheritance taxation shall be deemed the fair market value at the time of death. Similar provisions have been included in every compilation of income tax regulations since Regulations 45, promulgated in 1921 pursuant to the Revenue Act of 1918. In view of the numerous subsequent reenactments of the statute, it must be presumed that Congress both knew and approved the construction adopted in the regulations. *Helvering* v. *Reynolds Co.*, 306 U. S. 110.

Wholly aside from the legal significance of the regulations, petitioner cannot prevail on this issue for failure to produce any evidence of fair market value as of the date of her husband's death. Petitioner has not overcome the presumption of correctness attaching to respondent's determination.

Both because of the requirements of the regulations and for failure of proof, we have found as a fact that the fair market value of the Vogel common stock at the death of petitioner's husband equaled the basis determined by respondent.

*Decision will be entered for the respondent.*