Albert H. Herbster and Lena Herbster v. Commissioner.
Herbster v. Commissioner
Docket No. 80819.
United States Tax Court
T.C. Memo 1963-323; 1963 Tax Ct. Memo LEXIS 23; 22 T.C.M. (CCH) 1689; T.C.M. (RIA) 63323; December 11, 1963
David S. Meyers and Richard F. Stevens, for the petitioners. Eugene S. Linett, for the respondent. SCOTT Memorandum Findings of Fact and Opinion SCOTT, Judge: Respondent determined deficiencies in petitioners' income tax for the calendar years 1954 and 1955 in the amounts of $4,797.86 and $40.38, respectively, and additions to the tax for the calendar year 1954 under sections 294(d)(1)(A) and 294(d)(2) of the Internal Revenue Code of 1939 in the amounts of $389.90 and $352.73, respectively. Petitioners have conceded the correctness of the deficiency asserted by respondent for the taxable year 1955 *24 and respondent has conceded error in his determination of the addition to tax for the calendar year 1954 under section 294(d)(2) of the Internal Revenue Code of 1939. The issue for decision is the amount of gain realized by petitioners upon the sale in 1954 of 22 acres of land. Since the sales price of the land of $55,000 is not questioned by either party, our determination is limited to the basis of the property to petitioners. Petitioners apparently do not contest the addition to tax under section 294(d)(1)(A), except to the extent that the amount thereof is affected by the determination of their taxable income for the calendar year 1954. Findings of Fact Some of the facts have been stipulated and are found accordingly. Petitioners, husband and wife, residing in Toledo, Ohio, filed joint Federal income tax returns for the calendar years 1954 and 1955 with the district director of internal revenue at Toledo, Ohio. Lena Herbster, hereinafter referred to as petitioner, and her brother, Elwin H. V. Reeves, Jr., on December 21, 1954, sold a parcel of 80 acres of land located in Washington Township, Lucas County, Ohio (actually in the northwest sector of Toledo, Ohio) to Land *25 Developers, Inc., for $2,500 per acre for a total purchase price of $200,000. Petitioner owned 22 acres of the parcel at the time of the sale and her brother owned the remaining 58 acres. Petitioner's father, Elwin H. V. Reeves, Sr., died intestate, a resident of Ohio, on January 21, 1919. At the date of the death of Elwin H. V. Reeves, Sr., he was possessed of a parcel of 40 acres of land which was included in the inventory of an appraisement of his estate at an appraised value of $600 per acre. The 22 acres sold by petitioner in 1954 were a part of this 40-acre parcel. Although petitioner's father left a surviving spouse, she died shortly after his death and the property here involved was never treated as a part of her estate. Petitioner, her brother, Elwin H. V. Reeves, Jr., and her two sisters, Josephine N. Moore and Edith Herbster, were the surviving heirs of Elwin H. V. Reeves, Sr., and each inherited a one-quarter undivided interest in his estate. On April 15, 1920, the four heirs of Elwin H. V. Reeves, Sr., each became the sole owner of a portion of real estate included in their father's estate, the transaction being carried out by three of the heirs executing a quitclaim *26 deed to the fourth heir to a portion of the real estate. The quitclaim deed executed by petitioner's two sisters and her brother quitclaiming their interest in the 22 acres of land which petitioner sold in 1954 described this land as "The Easterly Twenty-two (22) acres of the Southwest quarter of Section Eight (8) Town Nine (9) South, Range Seven (7) East." This deed, executed on April 15, 1920, was received for recording in the land records of Lucas County, Ohio on July 31, 1920, and United States revenue stamps of $13 were placed thereon. In 1919 one dollar of United States internal revenue stamps for each $1,000 of sales price was required to be placed upon deeds. At the time petitioner acquired the 22 acres of land, the property was swampy land. Prior to the death of Elwin H. V. Reeves, Sr., he and Elwin H. V. Reeves, Jr., had done some drainage of the 40 acres of land of which the 22 acres sold by petitioner were a portion by digging certain drainage ditches for the purpose of draining the land. Sometime after April 15, 1920, petitioner and her brother, Elwin H. V. Reeves, Jr., had reached an understanding that the latter could use petitioner's 22 acres of land and that he *27 would clear the land off. About 1922 Elwin H. V. Reeves, Jr., began to clear some of the land. He did not clear very much the first year or two thereafter, and after that time he would clear between 2 and 4 acres during a period of 1 or 2 years. In order to clear the land, petitioner's brother had to build drainage ditches. After these ditches were built, he would fence off a part of the land and let hogs run on it to help remove the brush, and after keeping hogs on the land for a while would begin to grub the land, remove the large trees, and as a final step fill up the swamps and grade the area down. Petitioner's brother did some of the clearing of the land with hired labor and he paid all of the laborers hired for this purpose. After petitioner's brother had cleared a portion of the land, he would use the portion cleared for farming. Petitioner's brother finished the clearing of the 22 acres of land in about 1950 or 1952 although by 1938 he had a substantial portion of the land cleared. At the same time that petitioner's brother was clearing petitioner's 22 acres of land, he was also clearing in the same manner property adjacent thereto, which he owned. Petitioner's brother did *28 not pay any rent to petitioner for use of the 22 acres of land or give her any portion of any crops raised on that land or proceeds from the sale of such crops. Except for the arrangement between petitioner's brother and petitioner, petitioner's brother never rented any land for farming except for 24 acres located on Laskey Road not far from the 22 acres which petitioner sold in 1954. Petitioner's brother rented this 24 acres of land for one year, the year 1919, from his father's estate and paid a total rental for the year of $725 to the estate. Special assessments in the amount of $1,045.96 were assessed against the 22 acres owned by petitioner between the time petitioner acquired this land and the time she sold it. For the purpose of computing gain on the sale of the land sold by petitioner and her brother in 1954, they computed their bases as follows: Original unadjusted basis (fair market value in 1919:
$1,500
per acre X 80 acres)
$120,000.00
Improvements
Special assessments
$ 8,838.82
Tilling, at $125 per acre
10,000.00
Electrical lines
467.00
Telephone poles
150.00
Clearing, tree pulling, etc. at $175 per acre
14,000.00
Grading at $100 per acre
8,000.00
41,455.82
Total basis ($2,018.20 X 80 acres)
$161,455.82
Basis allocable to Elwin H. V. Reeves, Jr.'s 58 acres
$117,055.60
Basis allocable to petitioner's 22 acres
44,400.22
*29 Petitioners on their 1954 income tax return computed their capital gain from the sale of the 22 acres of land by using a sales price of $55,000 and a basis of $44,230.68 with a resulting long-term capital gain of $10,769.32. Respondent in his notice of deficiency increased petitioners' taxable income by $14,992.36 under the designation "long-term capital gain" and gave the following explanation: In Schedule D of your return for the taxable year ended December 31, 1954, you reported a long-term capital gain of $10,769.32 on the sale of 22 acres of land, having claimed a basis of $44,230.68. It is held your basis under section 1014 of the Internal Revenue Code of 1954 is $14,245.96. Accordingly your gain on this sale is increased by $29,984.72 which increases income to the extent of 50% thereof or $14,992.36 in accordance with section 1202 of the Internal Revenue Code of 1954. Opinion Both petitioner and respondent take the position that petitioner obtained the 22 acres of land she sold in 1954 by inheritance from her father in 1919. It is respondent's position that the $600 per acre appraisal of this land in the estate of petitioner's *30 father is the proper basis for the land and the amount of $14,245.96 determined by him in his deficiency notice is arrived at by adding to the $13,200 amount which represents 22 acres at $600 per acre, the amount of $1,045.96 of special assessments against the land between the date petitioner acquired the land and the date she sold it. It is petitioner's position that even though the land was appraised at $600 per acre in her father's estate, the fair market value of the land as of the date of his death was $1,500 per acre. It is petitioner's further position that to the value per acre of the land at the date she inherited it from her father should be added the amount which she expended thereafter for improvements to the land. It is petitioner's position that by permitting her brother to use the land rent free she in effect paid him for clearing the land and therefore to the value of the land should be added the rental value of the land to petitioner's brother over the years from 1922 to 1954, a 32-year period, or the fair value per acre for clearing the land. Respondent recognizes that the evidence shows that between the time petitioner acquired the land and the time she sold it, *31 the land was improved by being drained and cleared and that some, if not all, of these improvements would be in the nature of capital improvements, the cost of which should be added to the basis of the land. Respondent, however, takes the position that the evidence fails to show that the improvements to the land were made at any cost to petitioner. It is respondent's position that the evidence fails to show that petitioner's land had any fair rental value during the years 1922 through 1954, and that in any event petitioner could not be considered as having paid for improvements to the land in an amount greater than the value of such improvements since if the rental value of the land over the 32-year period exceeded the value of improvements, the balance of the rental value would be in the nature of a gift by petitioner to her brother. We agree with respondent that petitioner has failed to show that the fair market value of the land at the date she inherited it from her father exceeded $600 per acre. As respondent points out, where no Federal estate tax return has been filed, the value of property transmitted at death as appraised for state inheritance taxation shall be deemed the *32 fair market value of the property at the time of death. Mary Duerr, 30 T.C. 944, 948 (1958). In the instant case there is no showing that a Federal estate tax return was filed but it has been stipulated that the 22 acres of land which petitioner sold in 1954 was part of a tract appraised for inventory in her father's estate at $600 per acre. Furthermore, $600 per acre is the value which respondent in his determination placed upon the land and therefore this value is presumptively correct. In order to sustain her burden of showing a higher value of the land as of the date of her father's death petitioner offered the testimony of her brother who stated that in his opinion, based upon deeds he had seen and statements he had heard, the value of the land at the date of his father's death was $1,500 per acre. The deeds which petitioner's brother referred to in his testimony involved three pieces of property. One of these pieces of property consisted of two acres of land located about 1 1/2 miles from where petitioner's property was located. The deed transferring the property on which petitioner's brother based his testimony was executed in October 1923 and had United States *33 internal revenue stamps of $12.50 placed thereon indicating a price of the property of $12,500. Petitioner's brother knew nothing of the nature of this land. Another one of these deeds was executed April 1, 1924, and transferred an undesignated amount of land which petitioner's brother stated was 1 1/4 miles to 1 1/2 miles from petitioner's property. This deed had attached United States internal revenue stamps of $30. The third deed was executed on March 6, 1919, and transferred property described as follows: That part of the West one half (1/2) of the West one half (1/2) of the North West quarter (1/4) of Section Fifteen (15) Town Nine (9) South, Range seven (7) East, in Washington Township, Lucas County, Ohio lying south of the Toledo Terminal Railroad right of way and North of the North line of "Vardingne" Heights all in Washington Township, Lucas County, Ohio and containing 12.786 acres of land more or less. Attached thereto were $26 of United States internal revenue stamps indicating a price of $26,000. Petitioner's brother stated that this property was within one mile of his property which was adjacent to petitioner's 22 acres. Petitioner's brother in describing this land *34 stated that it was not swampy but was fairly decent ground that was being farmed. He gave no information about the land to show that it was in any way comparable to the condition in 1919 of the 22 acres which petitioner sold in 1954. The description of the approximately 13 acres of land in this deed shows that it was located along a railroad right of way and petitioner's brother made no reference to what effect this would have on the value of the land as compared to petitioner's 22 acres which the evidence gives no indication was so located. Furthermore, the testimony of petitioner's brother gives some indication that the sale of this land might have been for some reason at an unusually high price since at one juncture in his testimony he referred to the amount received by the times." At least there is nothing to inthe sellers of this land as being the "talk of dicate any comparability in the land transferred by the deed of March 6, 1919, and petitioner's 22 acres. There is even less to indicate any comparability of the other two parcels upon the sale of which the opinion of petitioner's brother as to the value of petitioner's land was based. A distance of a mile or 1 1/2 miles within *35 the limits of a city or bordering on a city area could of itself be sufficient to cause substantial variation in property value. Respondent offered the testimony of an expert who in support of his testimony produced deeds which he had obtained showing sales of property in the township adjoining that in which petitioner's 22 acres were located. These properties were all located within one-half mile or less of petitioner's land. One of these deeds was for a transfer of land in 1917, one in 1922, one in 1925, and one in 1927. Based on these deeds and certain other deeds which he examined, respondent's expert gave as his opinion that petitioner's land as of the date of her father's death would have a fair market value of less than $650 per acre. Respondent's expert witness had no knowledge as to the general type of land involved in the sales upon which he relied, the condition of such land as of the date sold, and many other elements which go into determining fair market value. Neither the opinion of petitioner's witness, her brother, nor of respondent's expert witness is based upon sufficient facts or knowledge to be given any weight in determining the value of petitioner's land in *36 1919. The record is therefore devoid of any probative evidence except the appraisal of petitioner's land in the inventory of her father's estate, to show the value thereof at the date of her father's death. Since the burden of proof to show error in respondent's determination is on petitioner, we sustain respondent in his use of $600 per acre as the value of the land at the date petitioner inherited it. We think the evidence is clear that some capital improvements were made to petitioner's 22 acres of land after she inherited it and prior to the time she sold it. However, the evidence is far from clear as to the extent of such improvements or as to what amount petitioner paid therefor by way of permitting her brother to use the land or the cost of the improvements even assuming some value for the work of petitioner's brother thereon. Petitioner argues that the fair rental value of the land throughout the 32-year period that her brother used it was $25 per acre. This argument is based on the opinion of petitioner's brother which apparently is based on the fact that in 1919 he rented some land from his father's estate for an amount in excess of that amount. Certainly there would be *37 no consistent rental value to farmland throughout a 32-year period. There is nothing in the record to show either that the land which petitioner's brother rented in 1919 was comparable to petitioner's 22 acres or that the rental was in an arm's-length transaction, being a rental by petitioner's brother from his father's estate. Neither is there any evidence to show that a rental value in 1919 would be in any way determinative of rental values in the years from 1922 to 1954. There is no evidence to show that petitioner's brother had any knowledge of rental values for any year other than 1919. Petitioner's brother estimated that the cost of clearing petitioner's land was approximately $500 an acre. In her tax return petitioner used an estimate of $400 per acre. The record has no supporting evidence for either estimate Nevertheless, we think it clear that there was some value to the use of petitioner's land by her brother and some cost of the capital improvements Therefore, using our best judgment and under the theory of Cohan v. Commissioner, 39 F. 2d 540 (C.A. 2, 1930), we determine that to the amount of $14,245.96 used by respondent as the basis of petitioner's 22 acres *38 of land should be added $4,800 for capital improvements to the land between the time petitioner acquired it and the time she sold it. Cf. Elwin H. V. Reeves, Jr. v. Commissioner, 314 F. 2d 438 (C.A. 6, 1963), affirming a Memorandum Opinion of this Court (T.C. Memo. 1961-132, filed May 12, 1961). Since petitioner offered no evidence with respect to respondent's determination of an addition to tax under section 294(d)(1)(A) of the Internal Revenue Code of 1939, we sustain respondent's determination, except to the extent that the amount of addition to tax is reduced by the reduction in petitioner's tax liability in accordance with our holding herein. Decision will be entered under Rule 50.