Eric V. Hawkinson, Dorothy J. Hawkinson v. Commissioner.
Hawkinson v. Commissioner
Docket No. 572-70.
United States Tax Court
T.C. Memo 1972-32; 1972 Tax Ct. Memo LEXIS 223; 31 T.C.M. (CCH) 124; T.C.M. (RIA) 72032; February 10, 1972, Filed Eric V. Hawkinson, pro se, 10455 S.E. 248th St., Kent, Wash. Randall G. Dick, for the respondent. TIETJENS
Memorandum Opinion TIETJENS, Judge: The Commissioner determined deficiencies in income tax of petitioners Dorothy and Eric Hawkinson as follows: Taxable Year Ended
Deficiency
Dec. 31, 1965
$ 452.63
Dec. 31, 1966
185.01
Dec. 31, 1967
1,220.31 Due to subsequent concessions by petitioners a part of the deficiencies are no longer disputed. The Commissioner determined that petitioners sustained a capital gain rather than a loss upon the sale of certain improved realty in Willamette *225 County, state of Washington, with a consequent determination that petitioners incorrectly computed the allowable depreciation on that property in 1965 and 1966 and the casualty loss deduction for the barn which was destroyed by fire. The resolution of all these issues depends on the petitioners' basis in the realty, which is the sole issue for our determination. Most of the facts are stipulated and are incorporated herein with the exhibits by reference. Petitioners Eric V. and Dorothy J. Hawkinson filed joint U.S. individual income tax returns for each of the calendar years 1965, 1966 and 1967 with the district director of internal revenue at Seattle, Washington. At the time the petition was filed petitioners resided in Kent, Washington. Petitioners sold the property in issue, consisting of approximately 59.4 acres of land and a five-bedroom house located near Raymond, Washington, for $15,000 in 1967. A barn located on the land was destroyed by fire in 1965. They claim that they sustained a capital loss on the sale equal to the difference of a claimed basis of $22,500 and the selling price. The property was originally owned by Hannah Orkney Wells and Earl Wells, the parents of *226 Mrs. Hawkinson, as community property. When Hannah died in 1958, Earl Wells acquired her one-half community interest by inheritance, and petitioners later acquired the property from him. Mr. Wells filed a printed form "Affidavit for Determination of Inheritance Tax Without Probate" for his wife's estate with the Inheritance Tax Division of the Tax Commission of the state of Washington in which he listed the value of the property as $9,325. When he died in 1962, the petitioners submitted the same valuation for the parcel, feeling that there "was no reason why the value of the property should change" in the interim, in the same form of affidavit which was filed with the state tax commission earlier on behalf of his estate. It is this value, $9,325, which the Commissioner determined was petitioners' basis in the property when they acquired it from Mrs. Hawkinson's father. The state tax authorities accepted that value for inheritance tax purposes on both occasions. At Eric Hawkinson's request, the chief of the Inheritance Tax Division sent the following letter dated February 11, 1969: At the time of Mrs. Wells death, Mr. Wells submitted $9,325.00 as the estimated market value of the *227 real estate. This figure was accepted by the State for purposes of computing the inheritance tax. No appraisal was made on behalf of the State. After Mr. Wells' death, an affidavit was submitted by Mrs. Hawkinson, again submitting the $9,325.00 figure. The affidavit refers to the earlier valuation, and states that there is no reason to believe that the property has increased in value. Since the term "assessed value" was used in the affidavit, we wrote for clarification, and received a letter of explanation from Mrs. Hawkinson * * *. 125 No federal estate tax returns were filed for either of the estates of Hannah or Earl Wells. The value of the gross estate for state inheritance tax purposes of the Hannah Wells estate, as disclosed from the affidavit, was an amount less than $36,000. Before his death Mr. Wells was anxious that his daughter should receive the farm from him, and with that in mind he executed, apparently without the assistance of a lawyer, two wills, one bill of sale and a deed all purporting to settle the property upon Mrs. Hawkinson. Petitioners received a letter dated December 17, 1968 from one C. M. Henry of the district office of the Internal Revenue Service, *228 which stated: We previously believed that you had inherited the property, hence our request for appraisals of the value at the time of inheritance. We later learned that the property was deeded to you after the death of Mrs. Hawkinson's mother, therefore, the basis to you in this property was its basis in the hands of the donor. In the absence of any other evidence as to the basis in the hands of the donor, we used the amount reported to the State Tax Commission. Following the district conference which petitioners had requested, one D. Larson, a conferee, wrote them in a follow-up letter: We must hold that the farm property sold in 1967 was received as a gift when deeded to you by Mrs. Hawkinson's father, Earl Wells, in 1959. Documents presented at the conference, indicate the Washington State Tax Commission accepted the contention of a gift having taken place and did not include the farm property in the gross estate of Mr. Wells when computing inheritance taxes. Your basis in the farm property for computing gain would be the basis in the hands of Mr. Wells. Mr. Wells acquired a new basis on December 4, 1958, the date of his wife's death. Section 1014(b)(6) of the Code provides, *229 in part, that the survivor in a community property state is regarded as acquiring his or her one-half of the community property by inheritance with the same basis as if it were acquired from the deceased. Mr. Wells' basis of the farm property as of December 4, 1958 is its fair market value on that date. Petitioners rented out the tract in 1962 and in computing the depreciation deduction they used the amount of $9,325 as the basis in that year. They increased that basis to $11,825 in 1963 when the assessed value of the property for local tax purposes was revised. In 1964 petitioners unsuccessfully attempted to sell the property by placing an advertisement in the Seattle Times which posted an asking price of $22,500. In that year they also secured a survey and appraisal of the property from a real estate agency, and petitioners increased their basis for Federal income tax purposes to $16,850 on that authority. Prior to the issuance of the notice of deficiency, E. J. Freeburn, in the district director's office contacted the Hawkinsons by mail with a request for additional information concerning their tax liability for 1965. She wrote in a letter dated May 10, 1968: According to *230 section 113 of the Internal Revenue Code the basis of property acquired by inheritance is the fair market value of the property at the date of death. Submit appraisals from two competent realtors, not involved in the sale, as to the fair market value of the property, land & building, in 1962 based on prices at that time. Petitioners obtained two letters from local companies, Davis Insurance and Real Estate, and Scofield Realtors, dated May 16 and May 20, 1968 respectively. The Davis letter was as follows: I am glad to substantiate the price of $22,500.00 as a fair price for your property in the year 1962. The present price is probably in the neighborhood of $30,000.00. Our property was worth much more than we could get in past years, but now we are "coming into our own." The Scofield letter was to the same effect: Since we had the above named property listed in 1966 and were quite familiar with it, it is our opinion the price of $18,950.00, for which we had it listed, was an extremely good value. Further, the fact that the barn was no longer standing and the owner was absent during the years preceding our listing would indicate a price of $22,500 in *231 1962 as a very realistic price and one we would surely have been happy to have represented. At about the same time petitioners also obtained data concerning the neighboring Julius Pehl and Julius Leske properties from the Pacific County, Washington Assessor, which we compare below to the Wells property: Assessed Value
Per Acre
Assessed Value
Total Acres
59.4
234.65
168.43
Year
Wells
Pehl
Leske
Wells
Pehl
Leske
1958
$33,150
$19,850
$141
$118
1959
$9,325
$157
1962
32,140
20,120
137
119
1967
48,160
33,340
205
198
During the period 1958 to 1967 the Pehl and Leske properties were devoted to dairy farming. The Wells farm was less valuable. After Earl Wells' death the petitioners rented it for awhile. The fire which destroyed the frame barn and miscellaneous farm equipment in 1965 was noted above. In 1966 and 1967 petitioners claimed deductions for repairs occasioned by the neglect of the tenants to maintain the property. In 1967 petitioners experienced substantial losses from breaking and entering. After 1966 the property was not rented, but petitioners occupied the house only intermittently. *232 The parties agree upon the following percentage allocation of petitioners' basis in the property as of the date it was acquired from Earl Wells: House
67.8%
Barn
21.3%
Land
10.9%
The Commissioner contends that the proper value of the petitioners' basis in the realty should be the figure returned in the inheritance tax affidavit filed for the estate of Earl Wells with the Tax Commission (now the Department of Revenue) of the state of Washington. Under section 1.1014-3(a) Income Tax Regs., [1] the appraised value of property for state inheritance tax purposes is deemed its fair market value if the estate was not required by section 6018, I.R.C. 1954, [2] to file a Federal estate tax return. *233 While we do not doubt the validity of the regulation and its relevance in this case, we wish to clear up some confusion in the Commissioner's presentation at the outset. The stipulation of facts is noncommital, but the exhibits clearly show that petitioners acquired the real estate from Earl Wells by gift and not by inheritance. Of the several legal precautions Earl Wells took to vouchsafe the farm to his daughter, Mrs. Hawkinson, it appears that one of the attempted inter vivos transfers was effective. Accordingly the petitioners' basis is that of their donor on the date of the gift, section 1015(a), and it is not necessarily the fair market value of the property on the date of Earl Wells' death in 1962. Earl Wells inherited his wife's one-half community interest in the farm upon her death in 1958, and he acquired a new basis in the property at that time, under section 1014(a), equal to its fair market value. Section 1.1014(a) and (b) and section 1.1014-2(a)(5), Income Tax Regs.
We need not, under the saving clause in the first sentence of section 1015(a), seek evidence of the market value of the property on the date Earl Wells gave it to Dorothy Hawkinson since the value of *234 the property did not decline below Earl Wells' basis in it on the date of Hannah Wells' death. The farm may indeed have appreciated in value, as did the neighboring Pehl and Leske parcels at all relevant times. At the least the evidence shows that the value did not change during the interval between the deaths of Hannah and Earl Wells. It remains only to determine the fair market value of the real property when Hannah Wells died in 1958, since that is equal to the petitioners' basis. We return to section 1.1014-3(a), Income Tax Regs. The affidavit filed with the state tax commission discloses that the estate of Hannah Wells was absolved from filing a Federal estate tax return under section 6018(a) because the value of her gross estate for 127 Federal estate tax purposes would have been less than $60,000. The appraised value supplied by Earl Wells was $9,325, and this figure was accepted by the state of Washington. The authorities still considered that a fair appraisal of the property when Mr. Wells died four years later. This Court has had the opportunity to pass on the regulation in analogous cases previously and has upheld it, and we have no occasion in this case to question *235 its validity. Mary Duerr, 30 T.C. 944, 948 (1958). [3] Yet viewing it conservatively as establishing a mere evidentiary presumption we would not hesitate to reach the same result after weighing petitioners' independent evidence of fair market value against a contemporary appraisal adopted by the state. Petitioners argue for a value of $22,500 and support it with two independent appraisals prepared in 1968 in connection with the instant litigation by real estate agents. At best these appraisals could only be reconstructions of values in the relatively distant past, and, judging from the tone of the brief letters petitioners received, they were actually little more than confirmations of a figure the petitioners had suggested in the first instance. We are not influenced by the fact that, due to the Commissioner's specific request for data from that year rather than from the legally relevant date of Hannah Wells' death in 1958, this evidence relates to the market value of the property in 1962. It appears that the value did not change during that interval anyhow, so that petitioners are not prejudiced *236 by the Commissioner's request. The petitioners' own evidence of the assessed value of the adjacent properties for local real estate tax purposes is damaging to their case. The Pehl and Leske properties, being producing dairy farms, apparently have always been more valuable than petitioners' parcel. Moreover the Commissioner's figure of $9,325 for the 1958 value of the property is more consistent with the spread in the assessed and actual market values of the 3 properties over the period 1958 to 1968 than the petitioners' corresponding figure of $22,500. We hold that the petitioners' basis in the realty when acquired from Earl Wells was $9,325. Decision will be entered for the respondent. Footnotes
1. Section 1.1014-3(a) provides: (a) Fair market value. - For purposes of this section and § 1.1014-1, the value of property as of the date of the decedent's death as appraised for the purpose of the Federal estate tax or the alternate value as appraised for such purpose, whichever is applicable, shall be deemed to be its fair market value. If no estate tax return is required to be filed under section 6018 (or under section 821 or 864 of the Internal Revenue Code of 1939↩), the value of the property appraised as of the date of the decedent's death for the purpose of State inheritance or transmission taxes shall be deemed to be its fair market value and no alternate valuation date shall be applicable. 2. All statutory references are to the Internal Revenue Code of 1954 unless otherwise stated.↩
3. See also Albert H. Herbster, 22 T.C.M. 1689↩, 1692 (1963).