LESTER LUMBER COMPANY, INC., PETITIONER, ET AL.,[1] *v.*
COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 17788, 17482, 17483, 17484, 17485, 17486, 17487, 17488, 17489, 17490, 17491, 17492, 17493, 17494, 14480.   Promulgated February 23, 1950.

---

[1] Proceedings of the following petitioners are consolidated herewith: Christine Lester; Darwin Lester, (Deceased); Doris Lester; G. T. Lester, Jr., and Annie Lester; George T. Lester, Sr.; George W. Lester; Lottie Lester; Tilden Lester; George D. Oakley and Julia Oakley; Robert H. Oakley and Lula P. Oakley; J. A. Richardson and Ida Z. Richardson; Henry J. Turner and Ruth Turner; Leslie E. Wells and Mable Lester Wells; and Robert E. Bell and Myrtle Bell.

*Robert Ash, Esq., John Y. Merrell, Esq., W. T. Durant, Esq.,* and *Leslie Kimble, C. P. A.,* for the petitioners.
*Paul E. Waring, Esq.,* for the respondent.

OPINION.

ARNOLD, *Judge*: Immediately prior to December 20, 1943, the Lester Lumber Co. had authorized common capital stock of 5,000 shares, par value $100 each, of which 3,029 were outstanding and 1,971 were unissued, and it had a surplus of at least $94,268.54. The stock was held by 15 individuals, each of whom had an open account on the corporation's books. As of December 20, 1943, there was credited to each stockholder's account a 4 per cent dividend on his stock, interest on his credit balance at 6 per cent, and a share of the surplus, and, in some cases, an amount representing a gift from George T. Lester, Sr. Each account was charged with the par value of a part of the previously unissued stock then issued and allotted to these stockholders. Except for 30 shares issued to Victor Lester for his note, the entire 1,971 shares were issued and charged to the several accounts at par value. The individual petitioners contend that, to the extent of the surplus, this was a nontaxable stock dividend, the balance of the stock issued being purchased for cash. Respondent contends that the crediting of the surplus to the stockholders was equivalent to a cash dividend and the 1,971 shares were all sold for cash.

Respondent relies upon the wording of the minutes of the meeting of the stockholders of December 20, 1943, to the effect that "all stock was bought by stockholders, increasing capital stock of Company to $500,000, all common stock. * * * The stock was all sold for cash to give the corporation more working capital." Respondent also points out that the surplus was credited to the stockholders' open accounts and the stock was charged to such accounts without distinction as to what portion of the credit balance applied to the stock represented interest, wages, gifts, dividends, or surplus, and that there was no declaration of a stock dividend. Respondent argues that from the moment the surplus was credited to the stockholders it became their property; that each stockholder understood the corporation's capital stock was to be increased and each stockholder's account was

to be charged with the par value; and that by leaving his share of the surplus in the account he had the benefit of offsetting against the stock the amount of the dividend constructively paid to, and received by, him.

The individual petitioners introduced testimony to the effect that the stockholders agreed to have the corporation issue at par the remaining authorized stock, 1,971 shares, for the pro rata share of each stockholder in the surplus and other amounts to their credit on the books. The purpose, it was said, was to put the corporation in a better credit position by tying up the surplus in capital so it could not be withdrawn and by reducing the credit balances of the stockholders on which the corporation had been paying interest at 6 per cent. The witnesses said that, although generally the stockholders could draw upon their accounts at any time, the credits for surplus were not subject to withdrawal, as they were intended to be applied against the charges for new stock, and that none of the stockholders received, or could receive, cash for his share of the surplus. George T. Lester, Jr., testified also that he personally made the entries in the ledger accounts of the stockholders, posting the various credits and the debit for issued stock at the same time, and the stockholders at no time had the opportunity to draw upon their accounts for the credits entered as their shares of the surplus.

Petitioners introduced as an exhibit a list of the stockholders, showing as to each the number of shares held prior to December 20, 1943, the distribution of surplus credited to his account on the books, and the face value of the new shares charged to his account, as shown in our findings of fact. The debit for new stock exceeded the credit for surplus in all cases except one. In that case George T. Lester Sr., received a credit for $6,317.77 of the surplus and was charged with $2,700 as the par value of the new stock issued to him. Why he did not receive stock to the full extent of his credit for surplus is not explained.

We have pointed out the necessity of a declaration as requisite to a finding of a nontaxable stock dividend. *J. Weingarten, Inc.*, 44 B. T. A. 798; *Humphreys Manufacturing Co.*, 45 B. T. A. 114. Here we have no declaration, unless the understanding of the stockholders related by the witnesses will serve the purpose. There was no resolution of the board of directors on this subject, and under the Virginia Code (1919), sec. 3840, the directors have the sole power to declare dividends unless otherwise provided by the certificate of incorporation. The exact terms of the arrangement are left to conjecture, and upon the critical point, whether the stockholders, or any of them, could elect to receive cash, the petitioners' own exhibit contradicts the oral testimony. Compare the two distributions involved

in *Southeastern Finance Co.*, 4 T. C. 1069, pp. 1090–1091. We have held in several cases that an agreement among stockholders to distribute surplus and use it to purchase stock is a private arrangement, is not imputed to or binding upon the corporation, and does not amount to a declaration of a nontaxable stock dividend, *Eugene E. Paul*, 2 B. T. A. 150; *W. J. Hunt*, 5 B. T. A. 356; *Harry Makransky*, 35 B. T. A. 395; *F. Brody & Sons Co.*, 11 T. C. 298. There being no record of a resolution of the board of directors authorizing a stock dividend, we are unable to make a finding that such a dividend was declared.

However, even if the individual petitioners' oral testimony is accepted as satisfying the requirement that a stock dividend was declared, the evidence does not justify the conclusion that the issuance of stock for the surplus was a nontaxable distribution. The individual petitioners' case depends upon the premise that the credits made for surplus to the accounts of the stockholders were not subject to withdrawal, but were required to be applied to the stock issued to capitalize this surplus. It is clear that the crediting of the surplus to the individual accounts would be a taxable dividend if there had been no concurrent issue of stock. Likewise, if all the stockholders had an election to take their shares in cash or in stock, the distribution would be taxable. While the individual petitioners contend they had no such election, the facts contradict this. George T. Lester, Sr., was entitled to a pro rata credit of $8,558.55 of the surplus. The amount credited to his account was $6,317.77, the difference representing a gift by him to his son, George W. Lester, to enable the latter to acquire more stock. Only $2,700 was charged to George, Sr.'s, account for new stock, and $3,617.77 remained to his credit and no more stock was available to absorb it. This balance was at his disposal and could be drawn in cash. The proportionate interest of each stockholder in voting power and net worth was thereby changed. *Harry Makransky, supra.* This stockholder exercised dominion and control over his pro rata share of the surplus, giving part of it to a son, using part to acquire stock, and retaining part as an open credit available for his use. If one stockholder had the right to dispose of his share of the surplus as he saw fit, all the stockholders had this right, as a corporation can not discriminate between stockholders as to their rights in a distribution of profits. Fletcher on Corporations, § 5352. The corporation could not authorize a cash dividend to one stockholder and a stock dividend to others. See *Harry Makransky, supra.* This is consistent with the minutes of the stockholders' meeting, which state the stock was all sold for cash. Lack of cash, suggested by the witnesses as a reason for denying the existence of such a choice on the part of the stockholders, is not a sufficient ground, for it is clear the corporation's credit was sufficient to enable it to borrow to the extent

of the surplus. See *Eugene E. Paul, supra.* The evidence does not establish that the stockholders had no choice in the matter.

Furthermore, even if the other stockholders had no choice, the fact that George T. Lester, Sr., had an election to receive stock or other property for his share of the surplus or a part thereof, requires a conclusion, pursuant to section 115 (f) (2) of the code,[2] that the distribution of surplus constitutes a taxable dividend in the hands of all the stockholders.

We conclude that the distribution of the surplus was a taxable dividend to the stockholders.

In the case of Lester Lumber Co., Docket No. 17788, respondent issued a notice of deficiency as a protective measure in case the surplus distribution was held to be a nontaxable stock dividend. In that notice the respondent determined that the excess profits credit for the company for the year 1943, based on invested capital, should be adjusted to eliminate $142,757.05 representing cash constructively received for stock issued December 20, 1943, and to restore to accumulated earnings and profits the distribution to its stockholders of $94,268.54. In view of our decision as to the dividend, decision will be entered for the petitioner in Docket No. 17788.

In the case of George T. Lester, Sr., Docket No. 17486, respondent contends that the petitioner is liable for a 5 per cent penalty under the provisions of section 293 (a), Internal Revenue Code, for negligence in failing to report interest of $10,160 credited to his account on the company's books and capital gain of $13,847.83 realized from the sale of land to the company. Petitioner was aware that the interest was credited to his account. His explanation as to that item is that his return was prepared by an attorney, as he considered the income tax law too complicated to undertake its preparation himself. As to the sale of land, he testified that, wishing to make a gift to members of his family, he deeded the land to the company in exchange for stock to be issued to members of his family, and considered that he did not realize gain from the transaction.

Section 293 (a) provides that:

\* \* \* If any part of any deficiency is due to negligence, or intentional disregard of rules and regulations but without intent to defraud, 5 per centum of

---

[2] (f) STOCK DIVIDENDS.—

(1) GENERAL RULE.—A distribution made by a corporation to its shareholders in its stock or in rights to acquire its stock shall not be treated as a dividend to the extent that it does not constitute income to the shareholder within the meaning of the Sixteenth Amendment to the Constitution.

(2) ELECTION OF SHAREHOLDERS AS TO MEDIUM OF PAYMENT.—Whenever a distribution by a corporation is, at the election of any of the shareholders \* \* \*, payable either (A) in its stock \* \* \*, of a class which if distributed without election would be exempt from tax under paragraph (1), or (B) in money or any other property \* \* \*, then the distribution shall constitute a taxable dividend in the hands of all shareholders, regardless of the medium in which paid.

the total amount of the deficiency (in addition to such deficiency) shall be assessed, collected, and paid in the same manner as if it were a deficiency * * *.

While petitioner had his return prepared by an attorney, he did not explain whether he informed the attorney of the interest item or the sale of the land. Petitioner was aware of the crediting of interest and the omission from his return of $10,160 on this account was negligence. Since some part of the deficiency was due to negligence, the assertion of the penalty must be approved, and it is not necessary to decide whether the failure to report capital gain was negligent.

Reviewed by the Court.

> *Decision will be entered for the petitioner in Docket No. 17788. Decision will be entered for the respondent in the other dockets.*