## The Geo. W. Ultch Lumber Co., Petitioner, v. Commissioner of Internal Revenue, Respondent.

Docket No. 30930.   Promulgated December 23, 1953.

*Reece A. Gardner, Esq.,* and *G. Lee Burns, Esq.,* for the petitioner.
*William B. Springer, Esq.,* for the respondent.

OPINION.

HARRON, *Judge: Issue 1.* Stockholders of petitioner received additional shares of stock on January 25, 1908, May 14, 1908, January 23, 1909, and January 11, 1910, in the aggregate amount of $55,065.35 ($59,600 less $4,534.65). Petitioner included the above amount in its invested capital in its excess profits tax returns for 1944 and 1945, as "Distributions of earnings and profits in stock of the corporation." Respondent excluded the entire sum from invested capital and petitioner challenges that determination. Under this issue, four issuances of stock are involved. The issue presents the question in each instance of the issuance of stock whether there was a distribution in stock of earnings and profits which is includible in invested capital within the provisions of section 718, Internal Revenue Code. The pertinent parts of section 718 are set forth in the margin.[1]

Petitioner's first argument is as follows: "All of the stock which is in controversy herein was issued prior to March 1, 1913 and even if it be considered that the stock so issued constituted stock dividends the earnings and profits capitalized thereby became paid-in capital and as such are includible in petitioner's invested capital." We reject this argument on the authority of *Owensboro Wagon Co.*, 18 T. C.

---

[1] SEC. 718. EQUITY INVESTED CAPITAL.

(a) DEFINITION.—The equity invested capital for any day of any taxable year shall be determined as of the beginning of such day and shall be the sum of the following amounts reduced as provided in subsection (b)—

(1). MONEY PAID IN.—Money previously paid in for stock, or as paid-in surplus, or as a contribution to capital;

(2) PROPERTY PAID IN.—Property (other than money) previously paid in (regardless of the time paid in) for stock, or as paid-in surplus, or as a contribution to capital. Such property shall be included in an amount equal to its basis (unadjusted) for determining loss upon sale or exchange. If the property was disposed of before such taxable year, such basis shall be determined under the law applicable to the year of disposition, but without regard to the value of the property as of March 1, 1913. If the property was disposed of before March 1, 1913, its basis shall be considered to be its fair market value at the time paid in. If the unadjusted basis of the property is a substituted basis, such basis shall be adjusted, with respect to the period before the property was paid in, by an amount equal to the adjustments proper under section 115 (1) for determining earnings and profits;

(3) DISTRIBUTIONS IN STOCK.—Distributions in stock—

(A) Made prior to such taxable year to the extent to which they are considered distributions of earnings and profits; and

(B) Previously made during such taxable year to the extent to which they are considered distributions of earnings and profits other than earnings and profits of such taxable year;

(4) EARNINGS AND PROFITS AT BEGINNING OF YEAR.—The accumulated earnings and profits as of the beginning of such taxable year;

\*　　　\*　　　\*　　　\*　　　\*　　　\*　　　\*

(c) RULES FOR APPLICATION OF SUBSECTIONS (A) AND (B).—For the purposes of subsections (a) and (b)—

(1) DISTRIBUTIONS TO SHAREHOLDERS.—The term "distribution" means a distribution by a corporation to its shareholders, and the term "distribution in stock" means a distribution by a corporation in its stock or rights to acquire its stock. To the extent that a distribution in stock is not considered a distribution of earnings and profits it shall not be considered a distribution. A distribution in stock shall not be regarded as money or property paid in for stock, or as paid-in surplus, or as a contribution to capital.

1107, 1110, 1111, 1112 (on appeal, C. A. 6) ; and *Prosper Shevenell & Son, Inc.*, 5 T. C. 88, 91.

We next consider the first of the series of pre-March 1, 1913, issuances of stock, that of January 25, 1908. Petitioner admits that this issuance was a stock dividend of common on common stock. We held in *Owensboro Wagon Co., supra*, that pre-March 1, 1913, dividends of common stock on common stock are not includible in equity invested capital under section 718 (a) (3). The facts here are indistinguishable from the facts in the *Owensboro Wagon Co.* case, and for the reasons there stated, it is held that the par value of the stock issued on January 25, 1908, is not includible in equity invested capital under subsection (a) (3) (A).

Equity invested capital is a statutory concept. *Valdosta Grocery Co.*, 2 B. T. A. 727; *Minneapolis Sash & Door Co.*, 2 B. T. A. 505. In *Owensboro Wagon Co., supra*, we said (p. 1109) :

It is apparent that under the statutory method prescribed by Congress for computing equity invested capital of a corporation, a distribution of stock is includible only to the extent that it is considered a distribution of earnings and profits. * * *

This is true in the instance of pre-March 1, 1913, distributions. A pre-March 1, 1913, distribution in stock is not to be considered a distribution of earnings and profits within section 718 (a) (3) unless the stock dividend would have been taxable in the hands of the distributee as income to him within the meaning of the sixteenth amendment to the Constitution. *Owensboro Wagon Co., supra*.

The other three issuances of stock in May 1908, January 1909, and January 1910 stand in a different position. We agree with the petitioner that the resolutions authorizing these three distributions must be construed as authorizing the payment of cash dividends. It follows that, in effect, each issuance of stock represented purchases by the stockholders with the proceeds of dividends, i. e., the dividends were reinvested in the corporation through the issuances of stock.

The three latter dividend declarations were not in terms of stock. The declarations created an indebtedness of the corporation to the stockholders and the subsequent disposition of the dividends did not alter the stockholders' right to have payment of the indebtedness. See *Bacon-McMillan Veneer Co.*, 20 B. T. A. 556. In this proceeding, each dividend was declared in a definite amount. Cash was paid to one or more of the shareholders, and in some instances the full amount of the dividend was paid in cash. In such circumstances, we have held that even though some shareholders accept stock in satisfaction of their dividend it cannot constitute a nontaxable stock dividend. *Harry Makransky*, 35 B. T. A. 395; *Lester Lumber Co.*, 14 T. C. 255. A corporation cannot discriminate among stockholders in the distribution

of profits. If one stockholder has the right to receive his share of the profits in cash, all of the stockholders have the same right, and the dividend distribution is regarded as a cash dividend. This is true even though some stockholders accept stock in satisfaction of their shares of a dividend.

Each of the dividend resolutions of May 14, 1908, January 23, 1909, and January 11, 1910, expressly provided for the manner in which the dividend therein declared was to be paid. Each of the resolutions provided that the share of at least one of the stockholders in the dividend distribution was to be paid to him in cash or credited to him on the books of the company subject to his disposal, which was done. We must therefore conclude that all of the stockholders had the right to receive their share of each of the aforementioned distributions of profits in cash or unrestricted credits on the company books, and that the dividend distributions must be regarded as cash dividends. To the extent that any stockholder was issued stock in payment of all or a part of his pro rata share of each dividend, the transaction constituted a purchase of stock by the stockholder. See *F. Brody & Sons Co.*, 11 T. C. 298.

It is held that the amounts in controversy with respect to the stock issued by the petitioner on May 14, 1908, January 23, 1909, and January 11, 1910, are includible in the petitioner's equity invested capital for the years 1941 to 1945, inclusive, as money paid in for stock within the meaning of section 718 (a) (1) of the Code.

*Issue 2.* On December 31, 1941, petitioner had outstanding 1,201 shares of capital stock which were held by three stockholders (two qualifying shares excepted). Each of the three stockholders turned in to the corporation, gratis, 35 per cent of his stock on December 31, 1941. The total number of shares returned to the corporation was 422 shares. The question under this issue is whether, because of the above facts, the petitioner is entitled to increase its equity invested capital by the amount of the adjusted basis (in the hands of the stockholders) of the 422 shares of stock.

When the three stockholders turned in proportional amounts of their respective stockholdings, their respective interests in the petitioner remained the same as before. Also, the capital of the corporation remained the same, i. e., reduction in the *number* of shares held by each stockholder did not bring about any increase or decrease in capital on December 31, 1941. Stock certificates are merely indicia of the interests owned by stockholders. Reduction on a proportional basis of the *number* of shares owned by each stockholder did not reduce the *interest* of each in petitioner's assets.

The petitioner's theory is unsound. Petitioner cites no authorities to support its theory, and we can find none. The fallacy of the con-

tention is made evident by the following: The petitioner is entitled to a credit based upon its actual capital. If petitioner's theory were to be approved, there would be a "padding" or doubling of part of the equity invested capital, for the purpose of the credit, because the capital represented by the 422 shares of stock was already reflected in petitioner's capital on December 31, 1941, before the stock was turned back to petitioner on a proportionate basis. The turning back of the 422 shares of stock on a proportionate basis neither increased nor decreased petitioner's invested capital.

Under this issue, it is again appropriate to note that "equity invested capital" is a statutory concept. Congress defined the term in section 718. "The general purpose of the provision is to arrive at an amount which has a direct relation to capital employed in the business. * * * Congress having defined the terms, only such amounts as are expressly provided for may be included." *Owensboro Wagon Co.*, *supra*, p. 1108.

It is held that the turning back by the stockholders of the 422 shares of stock did not bring about any increase in the capital of the petitioner, within the meaning of section 718 (a) and that the basis of the stock is not includible in equity invested capital.

*Issue 3.* The third issue is whether the respondent erred in computing the petitioner's accumulated earnings and profits as of the beginning of 1945 by accruing against the same the deficiency in excess profits tax liability involved herein for the year 1944.

This Court has previously held that, in determining the accumulated earnings and profits of an accrual basis taxpayer for the purpose of determining its excess profits credit, any income and excess profits tax deficiency for the preceding taxable year, to the extent determined under a Rule 50 computation, shall be accrued against and subtracted from the taxpayer's accumulated earnings and profits as of the beginning of the succeeding taxable year. *Stern Brothers & Co.*, 16 T. C. 295, 323. Therefore, under a Rule 50 computation, in accordance with the holdings under the issues, if there is a deficiency in the petitioner's excess profits tax liability for the year 1944, and if the petitioner has any accumulated earnings and profits as of the beginning of 1945, the deficiency so determined shall be accrued against, and subtracted from, the accumulated earnings and profits of the petitioner as of the beginning of 1945, for the purpose of determining the petitioner's excess profits tax credit for the year 1945.

*Issue 4.* The remaining question is whether the petitioner is entitled to any unused excess profits credit for the year 1944. This depends solely upon the Rule 50 recomputation to be made on the basis of our holdings herein.

*Decision will be entered under Rule 50.*