JOAN B. POWELL, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Powell v. Commissioner
Docket No. 43629-86
United States Tax Court
T.C. Memo 1990-329; 1990 Tax Ct. Memo LEXIS 347; 60 T.C.M. (CCH) 12; T.C.M. (RIA) 90329; July 2, 1990, Filed *347 Decision will entered under Rule 155. Arnold Jay Cohen and Robert F. Simon, for the petitioner. James M. Klein, for the respondent. WHALEN, Judge. WHALEN
MEMORANDUM OPINION Respondent determined a deficiency in petitioner's 1981 Federal income tax in the amount of $ 10,817, an addition to tax for negligence under section 6653(a)(1) in the amount of $ 541, and an addition to tax for negligence under section 6653(a)(2) in the amount of 50 percent of the interest due on petitioner's $ 10,817 underpayment of tax. (All section references contained herein are to the Internal Revenue Code, as amended.) The issues for decision are: (1) whether respondent's determination is within the scope of a restricted consent to extend the period for assessment and collection, or whether it is outside the scope of the restricted consent and is therefore barred by the period of limitations under section 6501(a); and (2) whether petitioner is liable for the additions to tax for negligence. *349 The facts of this case have been fully stipulated, and are so found. The Stipulation of Facts and attached exhibits are incorporated herein by this reference. Petitioner resided in Rockford, Illinois, at the time she petitioned this Court. On or before April 15, 1982, petitioner filed her Federal income tax return for calendar year 1981. On the return, petitioner claimed "qualifying widow" as her filing status. She reported taxable income of $ 159,069 and a tax liability of $ 67,424. The return was prepared on petitioner's behalf by Leaf, Dahl, and Company, Ltd., Certified Public Accountants. On Schedule G of the return, petitioner elected to compute her tax liability using the so-called income averaging limitation on tax, set forth in former sections 1301 et seq. As shown on Schedule G, petitioner based her income averaging computation on the following amounts of taxable income for the four preceding "base period" years: Year
Taxable Income
1977
$  11,258    1978
19,987    1979
16,988    1980
89,584    Total
$ 137,817    Petitioner used the above amounts of taxable income as her "base period income. *350 " In computing her "averagable income," $ 117,724, petitioner subtracted 30 percent of her total base period income, $ 41,345, from her 1981 taxable income, $ 159,069. The taxable income shown on Schedule G differs from the taxable income reported by petitioner and her deceased husband on their joint Federal income tax returns for the same years. These returns, also prepared by Leaf, Dahl, and Company, Ltd., reflect the following amounts of taxable income: Year
Taxable Income
1977
$  64,648    1978
113,512    1979
108,389    1980
88,584    Total
$ 375,133    Substitution of these figures on petitioner's 1981 Schedule G results in "averagable income" of approximately $ 46,529. On January 9, 1985, approximately two years and three months after petitioner's 1981 return was filed, petitioner executed I.R.S. Form 872(C), Consent To Extend The Time To Assess Tax ("the Consent"). The Consent was accepted on respondent's behalf on January 23, 1985. In the Consent, the parties agreed that "The amount of any Federal INCOME tax due on any return(s) made by or for the above taxpayer(s) [petitioner] for the period(s) *351 ended DECEMBER 31, 1981 may be assessed at any time on or before DECEMBER 31, 1986." Their agreement to extend the time to assess such tax was subject to the following limitation: THE AMOUNT OF ANY DEFICIENCY ASSESSMENT IS TO BE LIMITED TO THAT RESULTING FROM: (1) ANY CARRYOVER OR CONTINUING TAX EFFECTS CAUSED BY ADJUSTMENTS TO ANY PRIOR TAX RETURN; (2) ANY ADJUSTMENTS TO YOUR SHARE OF ANY ITEM OF INCOME, GAIN, LOSS, DEDUCTION, CREDIT AND/OR OTHER DISTRIBUTIONS FROM ENTITY(IES) KNOWN AS: YORKSHIRE LITERATURE 13-3005295 (3) ANY ADJUSTMENTS WHICH AFFECT YOUR BASIS IN THE AFOREMENTIONED ENTITY(IES); (4) ANY ADJUSTMENTS TO THE RETURN(S) OF THE AFOREMENTIONED ENTITY(IES) WHICH ALSO AFFECT YOUR RETURN; (5) ANY ADJUSTMENTS(S) TO YOUR RETURN CAUSED BY THE DETERMINATION, IF ANY, OF THE COMMISSIONER BASED ON ACTS, WHETHER OF COMMISSION OR OMISSION TAKEN BY YOU WITH REFERENCE TO AN INTEREST(S) IN THE ENTITY(IES); AND/OR ACTS WHETHER OF COMMISSION OR OMISSION, TAKEN BY AN INDIVIDUAL OR ORGANIZATION DEALING WITH THE ENTITY(IES); AND/OR THE ACT OF CURING ANY DEFECT WITH RESPECT TO AN INTEREST(S) IN THE ENTITY(IES); AND (6) ANY CONSEQUENTIAL CHANGES TO OTHER ITEMS BASED ON SUCH ADJUSTMENTS. *352 THE USE OF THE TERM "ENTITY" IS WITHOUT PREJUDICE TO THE RIGHT OF THE COMMISSIONER TO CHALLENGE WHETHER SUCH ENTITY EXISTS OR, IF EXISTING, THE CHARACTER OF SUCH ENTITY. ANY ADDITION TO THE TAX DUE PURSUANT TO SUBTITLE F, CHAPTER 68A, INTERNAL REVENUE CODE OF 1954 MAY BE ASSESSED WITHIN THE EXTENDED PERIOD AGREED UPON.
Thereafter, the parties agreed to certain adjustments to petitioner's distributive share of partnership items from Yorkshire Literature for the years 1979 and 1980, as set forth on I.R.S. Form 906, Closing Agreement On Final Determination Covering Specific Matters ("the Closing Agreement"). The pertinent parts of the Closing Agreement provide as follows: WHEREAS, a dispute has arisen between the parties as to the amount of the taxpayer(s)' distributive share of income, gain, loss, deduction, or credit from Yorkshire Literature. WHEREAS, the parties wish to determine with finality the taxpayer(s)' distributive share of income, gain, loss, deductions, or credit for the year(s) 1979 and 1980 from that partnership. NOW IT IS HEREBY DETERMINED AND AGREED, for Federal income tax proposes that: (1) The taxpayer(s)' distributive *353 share from that partnership for the year 1979 is a loss in the amount of $ 45,000.00. (2) Losses and deductions with respect to that partnership are not deductible by the taxpayer(s) in any year before or after 1979. (3) No investment credit is allowable with respect to that partnership in any year. (4) Partnership distributions are includable as ordinary income by the taxpayer(s) in the year received.
The Closing Agreement addressed the fact that in 1979 petitioner claimed a $ 30,000 loss and a $ 36,344 investment tax credit as her distributive share of income, gains, deductions, losses, and credits from Yorkshire Literature. In 1980, she did not claim any distributive share of income, gains, losses, deductions and credits from Yorkshire Literature. On August 11, 1986, respondent issued the notice of deficiency which is at issue in this case. In the notice, respondent made two adjustments to petitioner's 1981 tax liability. First, he disallowed $ 50 of a claimed $ 100 credit for a political contribution. Second, he adjusted petitioner's tax liability on the ground that she was not eligible to use the income averaging limitation on *354 tax ("the income averaging adjustment"). The notice gives the following explanation for this adjustment: It has been determined that you are not allowed to use income averaging to compute your 1981 income tax liability. Therefore, your income tax liability is being computed using the tax rate tables and is being increased in the amount of $ 10,817.
Generally, to qualify for the income averaging limitation in the "computation year" at issue, 1981, a taxpayer must have "averagable income" in excess of $ 3,000. Sec. 1301. "Averagable income" is the amount by which taxable income for the "computation year," plus or minus certain adjustments, exceeds 120 percent of "average base period income." Sec. 1302(a). "Average base period income" is one-fourth of the sum of the taxpayer's "base period incomes" for the four preceding "base period" years. Sec. 1302(b) and (c). "Base period income" is defined as the taxpayer's "taxable income" for those years, plus or minus certain adjustments. Sec. 1302(b)(2). In passing, we note that the above provisions were subsequently amended for computation years after 1983 to substitute "140%" for "120%" in the definition of "averagable *355 income," to substitute "1/3" for "one-fourth" in the definition of "average base period income", and to change the number of base period years from four to three. Sec. 173, Deficit Reduction Act of 1984, Pub. L. 98-369, 98 Stat. 703. We further note that the income averaging provisions were repealed altogether for taxable years beginning after December 31, 1986. Sec. 141, Tax Reform Act of 1986, Pub. L. 99-514, 100 Stat. 2117. Respondent's determination, as stated above, is a conclusory allegation which gives no reason why petitioner is ineligible for the income averaging limitation. On brief, respondent alleges that his determination was based upon the fact that petitioner, as a "surviving spouse," should have included her husband's income in "base period income" for each of the four base period years. See sec. 1.1302-2(b)(2), Income Tax Regs. We can only speculate that respondent must have concluded that if petitioner had included this income, then her "averagable income" for 1981 would be less than $ 3,000, with the result that she does not qualify for the income averaging limitation. We are somewhat puzzled, however, by the fact that substitution on Schedule G of the taxable *356 income reported by petitioner and her deceased spouse on their base period returns, as stated above, appears to result in "averagable income" of $ 46,529, which exceeds the $ 3,000 threshold. In any event, petitioner does not deny that respondent's determination, if timely, results in the deficiency at issue. Rather, petitioner contends that respondent's notice of deficiency is barred by the period of limitations on assessment and collection under section 6501(a). Generally, the amount of any income tax must "be assessed within 3 years after the return was filed." Sec. 6501(a). In this case, petitioner's 1981 return was deemed filed on April 15, 1982. Sec. 6501(b)(1). Accordingly, the period of limitations on assessment and collection under section 6501(a) expired on April 15, 1985. Respondent's notice of deficiency, dated August 11, 1986, would appear to be untimely unless otherwise authorized. One exception to the three-year period of limitations allows a taxpayer and respondent to consent in writing to extend the limitations period. Sec. 6501(c)(4). Such consents are not contracts but are unilateral waivers of a defense by the taxpayer. Stange v. United States, 282 U.S. 270 (1931); *357 Kronish v. Commissioner, 90 T.C. 684, 693 (1988); Roszkos v. Commissioner, 87 T.C. 1255, 1261 (1986), vacated and remanded on other grounds 850 F.2d 514 (9th Cir. 1988), cert. denied U.S. , 109 S. Ct. 1121 (1989); Piarulle v. Commissioner, 80 T.C. 1035, 1042 (1983).Nevertheless, because section 6501(c)(4) requires the parties to reach a written "agreement" regarding the extension, and gives them freedom to decide the terms governing the extension, contract principles are significant in reviewing consents to extend the limitations period. Roszkos v. Commissioner, supra at 1261; Piarulle v. Commissioner, supra at 1042; Pursell v. Commissioner, 38 T.C. 263, 278 (1962), affd. per curiam 315 F.2d 629 (3d Cir. 1963). In this case, as discussed above, the parties entered into a written agreement to extend the limitations period until December 31, 1986, and respondent determined the disputed adjustments prior to this deadline. The Consent, however, restricts respondent's right to make adjustments to petitioner's 1981 return. It expressly limits *358 the amount of any deficiency assessment to that resulting from six enumerated types of adjustments: (1) any carryover or continuing tax effects caused by adjustments to any prior tax return; (2) any adjustments to petitioner's share of any item of income, gain, loss, deduction, credit and/or other distributions from Yorkshire Literature; (3) any adjustments which affected petitioner's basis in Yorkshire Literature; (4) any adjustments to the return(s) of Yorkshire Literature which also affected petitioner's returns; (5) any adjustments to petitioner's return caused by the determination, if any, of the Commissioner based on acts, whether of commission or omission, taken by her with reference to her interest in Yorkshire Literature, and/or acts, whether of commission or omission, taken by an individual or organization dealing with Yorkshire Literature, and/or the act of curing any defect with respect to her interest in Yorkshire Literature; and (6) any consequential changes to other items based on such adjustments. Respondent states on brief that the Consent "was a restrictive consent, which was to limit the issues for adjustment to those relating to 'Yorkshire Literature,' or any *359 carryover or continuing tax effects caused by adjustments relating to 'Yorkshire Literature' and any prior returns." In effect, respondent acknowledges that the adjustments to petitioner's 1981 return determined in the notice of deficiency are untimely unless they fall within the scope of the adjustments contemplated by the Consent. At the outset, we note that respondent has not offered any explanation of how the Consent authorizes him to disallow the political contribution credit. In our view, the six types of adjustments contemplated by the Consent do not encompass the disallowance of this credit. Accordingly, we hold that this adjustment is outside of the scope of the Consent and is therefore barred by the period of limitations under section 6501(a). Turning to the income averaging adjustment, respondent argues that this adjustment is allowed under the terms of the Consent as a "deficiency assessment * * * resulting from * * * any carryover or continuing tax effects caused by adjustments to any prior tax return," and is therefore not barred by the extended period of limitations. Petitioner argues that the income averaging adjustment is outside the restricted scope of the *360 Consent, and is therefore untimely. Neither party suggests that the Consent is invalid, ambiguous, based on mutual mistake, or otherwise flawed contractually. Thus, we are called upon to interpret the Consent and decide whether the income averaging adjustment is within the intended scope of the six types of permissible adjustments contemplated by the parties. Cf. Russello v. Commissioner, T.C. Memo. 1989-391. We do not necessarily agree that respondent's income averaging adjustment falls within the intended scope of item (1) of the limitation contained in the Consent as "any carryover or continuing tax effects caused by adjustments to any prior tax return." We are uncertain whether the concepts of a "carryover" or a "continuing tax effect" apply in this case. In our view, respondent's income averaging adjustment falls within the scope of Consent, if at all, under item (6) of the limitation. Under that limitation, respondent could assess a deficiency "resulting from * * * consequential changes to other items based on such adjustments." The phrase "such adjustments" refers to the "adjustments" described elsewhere in the preceding five items. Item (1) mentions *361 "adjustments to any prior tax returns." Thus, the Consent empowers respondent, if he made a timely adjustment to a prior tax return, to make any "consequential changes" which result from that adjustment. We believe that if respondent made a timely adjustment to the taxable income shown on petitioner's prior return for a given base period year, he could make the "consequential change" of inserting her adjusted taxable income for that year on Schedule G and recalculating her income averaging computation. In this case, the only adjustments which respondent made to petitioner's "prior returns" are those reflected in the Closing Agreement for 1979 and 1980. First, respondent allowed petitioner a $ 45,000 loss from Yorkshire Literature for 1979, and disallowed a claimed investment tax credit for that year. The $ 45,000 loss allowed by the Closing Agreement for 1979 exceeded the $ 30,000 loss claimed on petitioner's return by $ 15,000, and had the effect of reducing her joint 1979 taxable income by $ 15,000. The disallowed investment tax credit did not affect petitioner's taxable income. In effect, the parties agreed in the Closing Agreement that the taxable income shown on petitioner's *362 1979 return, $ 108,389, should be reduced by $ 15,000, and that petitioner's correct taxable income for 1979 was $ 93,389. Second, although petitioner had not claimed any losses, credits or deductions from Yorkshire Literature on her 1980 return, the parties agreed that petitioner was not able to claim such items. Thus, in effect, the parties also agreed that petitioner's correct taxable income for 1980 was that reflected on her 1980 return, $ 88,584. Under the terms of the Consent, as a "consequence" of the above adjustments, and the parties' agreement with respect to petitioner's taxable income for 1979 and 1980, respondent can change the amounts of taxable income shown for those years on petitioner's 1981 Schedule G. Because respondent made no adjustments to petitioner's "prior returns" for 1977 and 1978, there are no "consequential changes" to be made to the items of taxable income shown for those years on Schedule G, nor are there any "carryovers" or "continuing tax effects" from either of those returns. Substitution of the above amounts of adjusted taxable income for 1979 and 1980 on Schedule G appears to decrease petitioner's averagable income to approximately $ 95,104, *363 but not to disqualify her from using the income averaging limitation. This would apparently produce a deficiency for 1981, but one substantially less in amount than the deficiency determined by respondent. Based on the above, we hold that respondent's income averaging adjustment is within the scope of the restricted Consent, and is therefore not barred by the statute of limitations under section 6501(a), but only to the extent that respondent may use petitioner's correct 1979 and 1980 taxable income in computing the amount of her "averagable income." Next, we must decide whether petitioner is liable for the additions to tax under sections 6653(a)(1) and (2) for "negligence or intentional disregard of rules or regulations." Petitioner contends that she is not liable for the negligence additions because she relied on her accountants to prepare her returns and correctly compute the income averaging limitation. Petitioner bears the burden of proof with respect to this issue. Rule 142(a), Tax Court Rules of Practice and Procedure; Bixby v Commissioner, 58 T.C. 757, 791-792 (1972). Negligence is defined as "lack of due care or failure to do what a reasonable and *364 ordinarily prudent person would do under the circumstances." Neely v. Commissioner, 85 T.C. 934, 947 (1985).Generally, the duty of filing accurate returns cannot be avoided by placing responsibility on an agent. Pritchett v. Commissioner, 63 T.C. 149, 174 (1974).However, "reasonable reliance on the advice of an expert suffices to avoid the negligence penalty." Industrial Valley Bank & Trust Co. v Commissioner, 66 T.C. 272, 283 (1976).See also Otis v. Commissioner, 73 T.C. 671, 675 (1980); Hill v. Commissioner, 63 T.C. 225, 251-252 (1974), affd. sub nom. Tenner v. Commissioner, 551 F.2d 313 (9th Cir. 1977); Conlorez Corp. v. Commissioner, 51 T.C. 467, 475 (1968). The record in this case contains two salient facts regarding petitioner's claim of reasonable reliance on counsel. First, the record shows that petitioner's 1981 return was prepared by the accounting firm of Leaf, Dahl, and Company. It also shows that the same accounting firm prepared her 1977, 1978, 1979, and 1980 returns. The fact that petitioner engaged the same accountants to prepare her returns *365 for at least five years indicates that she relied on them to render tax advice and properly complete her returns. It also indicates that the accountants who prepared her Schedule G for 1981 had available to them complete information regarding the taxable income shown on her prior returns, and that they were fully informed of the relevant facts regarding her joint base period income. This is not a case where a taxpayer has failed to furnish necessary information to an accountant for the preparation of a tax return or otherwise failed to act in good faith. See Johnson v. Commissioner, 74 T.C. 89, 97 (1980); Lester Lumber Co. v. Commissioner, 14 T.C. 255, 263 (1950). Under these circumstances, we believe that it is reasonable for petitioner, a widow who had recently lost her husband, to have relied on her accountants to prepare her return, complete her Schedule G, and perform the complex income averaging computation. Although this advice turned out to be erroneous, we do not think that petitioner's reliance thereon is unreasonable. See United States v. Boyle, 469 U.S. 241, 250-251 (1985); Jackson v. Commissioner, 86 T.C. 492, 539 (1986), *366 affd. 551 F.2d 1521 (10th Cir. 1989).Accordingly, we decline to impose the additions to tax under sections 6653(a)(1) and (2). To reflect the foregoing, Decision will entered under Rule 155.