CHARLES P. SEWARD AND JOAN A. SEWARD, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Seward v. Commissioner
Docket Nos. 17481-88, 18100-89[1]
United States Tax Court
T.C. Memo 1991-632; 1991 Tax Ct. Memo LEXIS 680; 62 T.C.M. (CCH) 1567; T.C.M. (RIA) 91632; December 19, 1991, Filed *680 Decisions will be entered under Rule 155. Robert C. Barrett, Jr., for the petitioners. Scott T. Welch and Linda J. Bourguin, for the respondent. SHIELDS, Judge. SHIELDS
MEMORANDUM FINDINGS OF FACT AND OPINION In deficiency notices dated April 18, 1989, and April 11, 1988, respectively, respondent determined deficiencies in and additions to petitioners' Federal income taxes for 1981 and 1984 as follows: Additions to tax
Year
Deficiency
Sec. 6653(a)(1) [2]
Sec. 6653(a)(2)
Sec. 6661
1981
$ 1,649
$ 82.45
*
--
1984
10,751
537.55 **
$ 2,687.75
After concessions the issues for decision are: (1) Whether petitioners are entitled under section 46(e)(3)(B) to an investment *681 tax credit (ITC) for 1984; [3] (2) whether petitioners are liable for additions to tax under section 6653(a)(1) and (2) for 1981 and 1984 for negligence or intentional disregard of rules and regulations; and (3) whether petitioners are liable for the addition to tax under section 6661 for 1984 for a substantial understatement of income tax. FINDINGS OF FACT Some of the facts have been stipulated. The stipulation of facts and attached exhibits are incorporated herein by reference. Petitioners are husband and wife and resided in the State of Louisiana at the time they filed their petition in this case. They timely filed joint income tax returns for 1981, 1984, and 1985. Petitioners own 100 percent of the stock of Video Park, Inc., (Video Park) a television production company, which was organized by them in 1982 under the laws of the State of Louisiana. *682 Mr. Seward has been president of Video Park since its formation. During 1984 and 1985, Mrs. Seward was its secretary-treasurer and as such issued checks for the corporation and acted as the liaison between Video Park and its accountants. During 1984, petitioners also operated as individual proprietors an equipment leasing business in which they purchased on December 18, 1984, certain video equipment for $ 77,561 from Ampex Corporation, a subsidiary of Allied Signal Corporation. Prior to the purchase of the video equipment, petitioners employed Chapman & Company, a certified public accounting firm, to investigate two potential sources of financing (Capital Bank and Trust of Baton Rouge and Signal Capital Corporation, a subsidiary of Allied Signal) and to advise them which of the two lenders would provide the most favorable financing terms. Upon the advice of the accounting firm, petitioners obtained the financing from Signal Capital Corporation, and Mr. Seward executed a promissory note and a security agreement in favor of the lender. After its purchase petitioners leased the video equipment to Video Park in December of 1984, and on their 1984 return claimed an investment tax *683 credit with respect to the video equipment in the total amount of $ 7,256, which completely offset their 1984 income tax liability and left a balance of unused credit in the amount of $ 1,647. With an Application for Tentative Refund on Form 1045, petitioners carried the balance of the credit back to 1981. In claiming the ITC for 1984, petitioners did not attach to their 1984 return the statement required by section 1.46-4(d)(2), Income Tax Regs. The 1984 return and the application for refund in 1981 were prepared for petitioners by Chapman & Company. In connection with the video equipment, petitioners claimed a depreciation deduction on Schedule C of their 1984 return in the amount of $ 15,340, and on their 1985 return they claimed deductions in the amounts of $ 15,165 for depreciation and $ 8,038 for interest. In an amended return for 1985 petitioners reported as additional income a bonus from Video Park in the amount of $ 4,500 and claimed additional lease expenses in the same amount. The additional lease expenses in the amount of $ 4,500 claimed on the 1985 return consist of accounting expenses totaling $ 3,327.06, salaries incurred in training operators for Video Park in *684 the amount of $ 1,000, and insurance in the amount of $ 172.94. Both the original and the amended returns for 1985 were prepared by Robert C. Barrett, Jr., of Chapman & Company (later Barrett & Company). The equipment lease from petitioners to Video Park required a monthly rental of $ 1,825. The term of the lease was for 2 years commencing on December 31, 1984, with a renewal option in the lessee for an additional term of 1 year. Under the terms of the lease petitioners were required to insure the video equipment. However, the lease also permitted Video Park to insure the equipment if it desired to do so and from March 12, 1984, through March 12, 1985, Video Park paid $ 2,507 to State Farm Insurance Company for insurance on equipment. The record fails to disclose whether any part of this payment was for insurance on the video equipment. Under the terms of the lease petitioners were required to provide operators for the equipment for 1 year in order to enable Video Park to train its personnel. Mr. Seward trained three individuals to operate the equipment, but these individuals were paid $ 1,000 with checks from the bank account of Video Park. From December 1984 through October *685 1985 the accounting firm of Chapman & Company issued seven invoices in the total amount of $ 4,055.99 for services performed for petitioners and Video Park. Five of the invoices totaling $ 2,869 are addressed to Charles P. Seward and two of the invoices in the amount of $ 1,186.99 are addressed to Video Park. Each invoice contains a short description of the services performed by Chapman & Company. One of the invoices addressed to Video Park in the amount of $ 458.06 is for work performed for petitioners in assisting them to determine the most favorable source of financing for the purchase of the video equipment. All seven invoices were paid by checks on the bank account of Video Park. OPINION (1) Investment Tax Credit. Section 38 allows a credit against income tax for investments in certain property in an amount determined under section 46. Section 46(e)(3)(B) provides, in relevant part, that noncorporate lessors, such as petitioners, are entitled to an investment tax credit under section 38 with respect to leased property if: (1) The term of the lease (taking into account options to renew) for the property is less than 50 percent of the useful life of the property, *686 and (2) during the first 12 months after the property is leased, deductions allowable to the lessor under section 162 (other than rents and reimbursed amounts with respect to the leased property) exceed 15 percent of the rental income from the property. In this case the parties agree that the useful life of the video equipment is 12 years. Therefore, since the term of the lease, including the option to renew, is for 3 years, the first requirement of section 46(e)(3)(B) is satisfied. With regard to the second requirement of section 46(e)(3)(B), petitioners contend that during the first year of the lease, i.e., 1985 they as lessors incurred section 162 expenses with respect to the video equipment in the amount of $ 4,500, which exceeds 15 percent of the rental income received under the lease. Specifically, petitioners contend that by the reimbursement to Video Park reported on their amended return for 1985 they incurred accounting expenses of $ 3,327.06, salary expenses of $ 1,000, and insurance expenses of $ 172.94. Respondent argues that the 15-percent test of section 46(e)(3)(B) is not satisfied because: (1) The accounting fees are capital expenditures and not section 162 deductions; *687 (2) the insurance premiums were paid on a policy in which Video Park, not petitioners, was the insured; and (3) the expenses for the accounting fees and the insurance premiums were paid by Video Park and not petitioners. [4] We agree with respondent for the reasons set forth below. First, accounting fees such as those involved herein which are incurred in connection with the acquisition of an asset with a useful life of more than 1 year are capital expenditures and are not deductible under section 162. Sec. 263; sec. 1.263(a)2(a), Income Tax Regs.; Shainberg v. Commissioner, 33 T.C. 241, 250 (1959). Consequently, the accounting fees cannot be *688 used in determining whether petitioners satisfy the 15-percent test of section 46(e)(3)(B). Secondly, under the terms of the lease agreement Video Park, as the lessee, had the right to obtain insurance on the video equipment and from the record as a whole we cannot determine whether the $ 172.94 in premiums relate to a policy owned by petitioners or to a policy owned by Video Park. Therefore, petitioners have failed to carry their burden of proving that the premium payments were their expenses and not those of Video Park. Therefore, the premium payments cannot be used in determining whether the 15-percent test is satisfied. Finally, we are not satisfied that petitioners have established that they actually paid the accounting fees, salaries, and insurance premiums. In fact, petitioners admit that initially Video Park paid all of these expenses in 1985 but contend that certain entries were made on the books and records of Video Park and reflected on their amended return for 1985 to account for the fact that these payments were made on behalf of petitioners. In addition, petitioners claim that the bonus reported on their amended 1985 return was to account for the income which arose *689 from these payments by Video Park. However, the only evidence in the record on this point is the testimony of petitioners and Timothy Barrett, a certified public accountant employed by Chapman & Company. Such uncorroborated self-serving testimony is not persuasive, however, especially where as here petitioners as the only shareholders of Video Park have failed to explain why they were unable to produce any corporate books or records which tended to establish that the bonus they received in 1985 was to account for the imputed income which they realized upon Video Park's payment of their expenses. In fact, while the filing date of the amended 1985 return does not appear in the record, it obviously occurred after the original return was filed in 1986. It appears, therefore, to be an afterthought to provide support for petitioners' contention that they reimbursed Video Park for these payments. See Mullins v. Commissioner, T.C. Memo 1989-129; Bliss v. Commissioner, T.C. Memo 1985-612. Consequently, we conclude from the record as a whole that petitioners are not entitled to utilize the accounting fees or the insurance premiums in determining *690 whether the 15-percent test of section 46(e)(3)(B) is met. (2) Additions to Tax for Negligence or Disregard of Regulations. Section 6653(a)(1) provides that if any part of any underpayment of tax is due to negligence or intentional disregard of rules or regulations, there shall be added to the tax an amount equal to 5 percent of the underpayment. Section 6653(a)(2) provides an additional negligence addition in an amount equal to 50 percent of the interest payable on the portion of any underpayment that is attributable to negligence. Negligence as used in section 6653(a) is defined as the lack of due care or the failure to do what a reasonable and ordinarily prudent person would do under similar circumstances. Neely v. Commissioner, 85 T.C. 934, 947 (1985). Respondent's determination is presumptively correct and petitioners have the burden of proof on the issue. Rule 142(a). Bixby v. Commissioner, 58 T.C. 757, 791 (1972); Enoch v. Commissioner, 57 T.C. 781, 802 (1972). Petitioners assert that they are not liable for the additions to tax determined by respondent for negligence because they relied on the advice *691 of their tax return preparer, Chapman & Company, a firm of certified public accountants. Good faith reliance on the advice of counsel or a qualified accountant can be, under certain circumstances, a defense to the addition to tax for negligence. See, e.g., Ewing v. Commissioner, 91 T.C. 396, 423-424 (1988), affd. without published opinion 940 F.2d 1536 (9th Cir. 1991), affd. in part and dismissed in part without published opinion sub nom. Toll v. Commissioner, 940 F.2d 1534 (9th Cir. 1991); Jackson v. Commissioner, 86 T.C. 492, 539-540 (1986), affd. 864 F.2d 1521 (10th Cir. 1989); Pessin v. Commissioner, 59 T.C. 473, 489 (1972); Conlorez v. Commissioner, 51 T.C. 467, 475 (1968); see also United States v. Boyle, 469 U.S. 241, 250-251, 83 L. Ed. 2d 622, 105 S. Ct. 687 (1985). However, reliance on an attorney, accountant, tax adviser, or tax return preparer as a defense to the addition to tax for negligence is not available in the absence of a showing of the information that the taxpayer gave to the adviser. Pessin v. Commissioner, supra; Enoch v. Commissioner, supra; *692 Lester v. Commissioner, 14 T.C. 255, 263 (1950). The record in this case does not reflect what information petitioners gave to their return preparer, what advice they sought from the preparer, and what advice they received. Without such evidence we are unable to evaluate petitioners' alleged reliance on their return preparer. The record does establish that a firm of certified public accountants prepared their returns and advised them with respect to the financing of a purchase of video equipment. However, the record does not reflect what action, if any, the firm took with respect to the books and records of Video Park, petitioners' wholly owned corporation, or the nature and condition of such records. Therefore, petitioners, who are knowledgeable business people who obviously know the importance of records, have failed to carry their burden of proving that the deficiencies due from them were not due to negligence. (3) Addition to Tax under Section 6661 for a Substantial Understatement. An understatement occurs under section 6661 when the amount shown as tax on a return is less than the amount required to be shown. Sec. 6661(b)(2). An understatement *693 of tax is substantial if it exceeds 10 percent of the tax required to be shown on the return for the taxable period or $ 5,000, whichever is greater. Sec. 6661(b)(1). Respondent's determination of an addition to tax for 1984 under section 6661 is presumed to be correct and petitioners have the burden of proof on the issue. Marcello v. Commissioner, 43 T.C. 168 (1964), affd. in part and remanded in part 380 F.2d 499, 505-507 (5th Cir. 1967). Petitioners advance four arguments in support of their position that the addition under section 6661 should not be imposed. First, petitioners rely on Woods v. Commissioner, 91 T.C. 88 (1988), where we held that in determining the amount of an underpayment, a taxpayer's withholding credits must be subtracted from the understatement. Petitioners contend that with the subtraction of their withholding credits from the amount of the understatement, there is no underpayment and therefore no addition to tax under section 6661. Petitioners' argument is without merit because in Smith v. Commissioner, 93 T.C. 378 (1989), affd. on other issues sub nom. Karr v. Commissioner, 924 F.2d 1018 (11th Cir. 1991), *694 and revd. and remanded on other issues 937 F.2d 1089 (6th Cir. 1991), we held that the decision in Woods is not applicable where as here the withheld taxes have been refunded to the taxpayers. Since the withholding credits claimed by petitioners on their 1984 tax return were refunded to them, their understatement of tax for 1984 is not reduced by the amount of the withholding credits. Smith v. Commissioner, supra.
Second, petitioners contend that respondent abused his discretion under section 6661(c) which provides that respondent "may waive all or any part of the addition to tax provided by this section on a showing by the taxpayer that there was reasonable cause for the understatement (or part thereof) and that the taxpayer acted in good faith." Reliance on the advice of an accountant may constitute reasonable cause and good faith. Sec. 1.6661-6(b), Income Tax Regs. The important factor is the extent of the taxpayer's effort to assess his proper tax liability under the law. We have found that in this case petitioners have failed to establish that their understatement was due to their reliance on the advice of their return preparer. *695 Therefore this argument is inapposite. Third, petitioners argue that there was adequate disclosure under section 6661(b)(2)(B) which provides that a section 6661 addition may be reduced by that portion of the understatement which is attributable to an item other than a tax shelter where the facts relevant to the items' tax treatment are adequately disclosed on the return or in a statement attached to the return. Sec. 1.6661-4(a), Income Tax Regs. To constitute an adequate disclosure in an attached statement under section 6661(b), the statement must include a caption, an identification of the item, the amount of the item being disclosed, and facts affecting the tax treatment of the item to reasonably apprise respondent of the potential controversy concerning such tax treatment. Sec. 1.6661-4(b)(1), Income Tax Regs. To constitute adequate disclosure on the return, the taxpayer must furnish sufficient information to enable respondent to identify the potential controversy. In or with their return for 1984, petitioners did not disclose sufficient facts to reasonably apprise respondent of the potential controversy with respect to their claimed credit. Consequently, they are not *696 entitled to any reduction in the addition to tax under section 6661(b)(2)(B). Schirmer v. Commissioner, 89 T.C. 277 (1987). We conclude therefore that if a Rule 155 computation reveals that after concessions the understatement of petitioners' income tax for 1984 constitutes a substantial understatement under section 6661(b)(1), petitioners are liable for the addition to tax provided by section 6661 without any reduction. Decisions will be entered under Rule 155. Footnotes
1. By order dated October 25, 1989, these cases were consolidated for purposes of trial, briefing, and opinion.↩
2. Unless otherwise indicated all section references are to the Internal Revenue Code as amended and in effect for the years in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.↩
*. 50 percent of the interest due on $ 1,649 ** 50 percent of the interest due on $ 10,751 ↩
3. Since the unused portion of the ITC petitioners claimed in 1984 was carried back to 1981, the resolution of the issue in 1984 will resolve the dispute for 1981.↩
4. Respondent also contends that petitioners are not entitled to the ITC because they failed to attach a statement to their return as required by sec. 1.46-4(d)(2), Income Tax Regs.↩ Since we agree with respondent's first three arguments and conclude as a result that petitioners are not entitled to the ITC, we do not address respondent's fourth contention.