**Raymond DAY and Anna Joyce Day, Appellants,**

v.

**UNITED STATES of America, Appellee.**

**William L. DAY and Jane A. Day, Appellants,**

v.

**UNITED STATES of America, Appellee.**

Nos. 83–2301, 83–2302.

United States Court of Appeals, Eighth Circuit.

Submitted April 13, 1984.

Decided May 14, 1984.

Rehearing and Rehearing En Banc Denied June 5, 1984.

Glenn L. Archer, Jr., Asst. Atty. Gen., Michael L. Paup, Ann Belanger Durney, Jay W. Miller, Attys., Tax Div., Dept. of Justice, Washington, D.C., for appellee; George W. Proctor, U.S. Atty., Little Rock, Ark., of counsel.

Fletcher C. Lewis, Little Rock, Ark., for appellants.

Before ROSS, ARNOLD and FAGG, Circuit Judges.

FAGG, Circuit Judge.

Raymond and William Day appeal from the judgment of the district court that certain commodity futures transactions be

treated as capital, rather than ordinary, losses. We affirm.

The Days are brothers engaged in separate farming operations in southeast Arkansas. During the years in question, the Days raised cotton and soybean crops on their farms and also traded extensively in cotton and soybean futures. Losses totalling $254,609 were incurred by the Days as a result of their trading and were claimed by them as ordinary losses due to hedging. The Commissioner determined that the futures trading was speculative in nature and allowed the losses only as capital losses. Following a trial, the jury returned a verdict in favor of the Days, determining that their commodity futures trading activity constituted hedging. The district court, the Honorable G. Thomas Eisele presiding, set aside the verdict and entered judgment disallowing the losses as ordinary losses on the ground that the Days' futures transactions did not constitute hedging for tax purposes.

On appeal, the Days contend that the district court committed error in setting aside the jury verdict. They argue that the question of whether the futures trading constitutes hedging or speculation is a factual, and not a legal, issue.

■ Gains or losses from trading in commodity futures contracts are normally treated as capital gains or losses. *See Hendrich v. Commissioner*, 40 T.C.M. (CCH) 997, 999 (1980); *Estate of Laughlin v. Commissioner*, 30 T.C.M. (CCH) 227, 230 (1971). An exception to that rule exists, however, when commodity futures contracts are used to provide bona fide hedging protection in the taxpayer's business. 26 U.S.C. § 1233(g). The Tax Court has explained the difference between hedging and speculative activity:

A hedge * * * is not a transaction looking to a favorable fluctuation in price for the realization of profit on the particular futures contract itself, as in the case of a speculative or capital transaction, but is a form of insurance against unfavorable fluctuations in the price of a commodity in which a position has already become

fixed or, as in the case of a producer such as a cotton grower, will become fixed in normal course and the sale, liquidation, or use of the commodity is to occur at some time in the future.

*Muldrow v. Commissioner*, 38 T.C. 907, 913 (1962). Thus, where a hedge is made, a position is taken in the futures market to offset a risk with respect to actual commodities.

■ We agree with the Days that hedging is essentially a factual inquiry, but in this case, we concur in the district court's assessment that the only reasonable conclusion to be drawn from the undisputed facts was that the Days were not engaged in hedging, but instead were engaged in speculative activity. First, the Days often took "long" positions in the futures market. Rather than providing protection against an adverse fluctuation in the price of their crops, this actually increased their risk because if the market price of the commodity fell, the Days stood to lose on both their crops and the futures contracts. Second, Raymond Day had forward contracted, or booked, his cotton crop in the years in question, and thus he needed no protection against a decline in the price of the crop. Although he testified that the futures contracts would help him if he had "booked too cheap" or if he had a drought, in essence, this was only a desire for additional income by making a profit on the futures contracts, without regard to the price obtained on the crops themselves. Finally, the evidence does not suggest an integral relationship between the Days' farming operations and the commodity futures transactions. *See Corn Products Refining Co. v. Commissioner*, 350 U.S. 46, 51, 76 S.Ct. 20, 23, 100 L.Ed. 29 (1955). The Days were "in" and "out" of the futures market throughout the year in both "long" and "short" positions; their trading was not restricted to the seasonal period in which they planted or harvested their crops. Further, the Days generally would open and close a position within ten days and frequently would do so on the same day. No short position was held open for

more than 23 days, and the longest period that any futures contract was held open was 30 days. In sum, the Days' futures trading was related not to their farming operation but rather to market trends. The only reasonable conclusion to be drawn from the Days' futures transactions is that they were engaged in speculative, not hedging, transactions.

The Days have also argued that the district court committed error in deeming certain payments made by their corporation to be constructive dividends. We find that this argument is without merit. The judgment of the district court is affirmed.

Affirmed.