JAMES D. FORTNER, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Fortner v. Commissioner
Docket No. 26813-89
United States Tax Court
T.C. Memo 1993-195; 1993 Tax Ct. Memo LEXIS 199; 65 T.C.M. (CCH) 2560; May 4, 1993, Filed *199 Decision will be entered under Rule 155. For petitioner: Andrew G. Shebay III. For respondent: Steven M. Diamond, C. Ted Sanderson, and David H. Peck. COLVIN
COLVIN
MEMORANDUM FINDINGS OF FACT AND OPINION COLVIN, Judge: Respondent determined deficiencies in petitioner's Federal income tax of $ 11,011 for 1981, $ 11,463 for 1982, and $ 4,915 for 1983, and additions to tax as follows: Additions to Tax Year
Sec. 6653(a)(1) [1]
Sec. 6653(a)(2)
Sec. 6651(a)
Sec. 6661
1981
$ 550.55
[2]
$ 2,752.75
--  1982
573.15
[2]
2,865.75
$ 2,865.75
1983
406.15
[2]
1,228.75
--  After concessions, the following issues remain to be decided: 1. Whether petitioner's cotton futures contracts were held in connection *200 with petitioner's purchase and sale of 121 bales of cotton in 1981. We hold that they were not. 2. Whether petitioner's losses from trading cotton futures contracts in 1981 are ordinary or capital. We hold that they are capital losses. 3. Whether petitioner is entitled to more than a $ 3,000 capital loss carryforward under section 1211 from 1981 to 1982 and 1983. We hold that he is not. 4. Whether petitioner is entitled to deduct $ 34,691 as cost of goods sold. We hold that he is not. 5. Whether petitioner is liable for additions to tax for failure to timely file under section 6651(a), for negligence under section 6653(a)(1) and (2), and for substantial understatement of tax under section 6661 for 1982. We hold that he is. All section references are to the Internal Revenue Code in effect for the years in issue, and Rule references are to the Tax Court Rules of Practice and Procedure. FINDINGS OF FACT Some of the facts have been stipulated and are so found. 1. Petitioner
Petitioner resided at Hitchcock, Texas, when he filed the petition in this case. He used the cash method of accounting during the years in issue. Petitioner's grandfather and uncle were cotton *201 merchants for many years. Petitioner was a commissioned cotton buyer for his uncle's company, Gant Colley Cotton Co., Dallas, Texas, from 1973 to 1976. He became the head buyer, a position which involved both buying and recapping cotton for sorting into grades. Petitioner moved to Houston in 1981 where he was employed by Louis Delhomme Marine Co. from about May 1981 through at least 1983. 2. Petitioner's Cotton Futures Trading Activities
Petitioner had traded cotton futures on his own account since the mid-1970s. He did business as Fortner Cotton Co., a sole proprietorship, from 1977 to the spring of 1981. He opened a commodity trading account with Merrill, Lynch, Pierce, Fenner, & Smith, Inc. (Merrill Lynch), on September 22, 1980, and used the account to buy and sell cotton futures contracts from September 22, 1980, to April 27, 1981. A commodity futures contract is an agreement to deliver or receive a specified quantity and grade of a commodity in a designated month in the future (the delivery month). A futures trader may avoid the obligation to deliver or receive the underlying commodity by buying or selling an offsetting futures contract for the same delivery *202 month before delivery. See Smith v. Commissioner, 78 T.C. 350, 354 (1982) (description of commodity futures contract). The commodity must be paid for when a party takes delivery on a contract. Petitioner had large margin calls on his Merrill Lynch account from February through April 1981, which he covered with cash payments. Petitioner needed large sums of cash during this time. Petitioner wrote checks to Merrill Lynch to cover margin calls totaling more than $ 245,000 from February to April 1981, $ 110,000 of which was honored and $ 135,000 of which was dishonored because petitioner had insufficient funds. Merrill Lynch closed the open positions in petitioner's Merrill Lynch account on April 29, April 30, and May 1, 1981, when he could not meet a margin call. Petitioner bought and sold more than 550 cotton futures contracts representing 55,000 bales of cotton between September 22, 1980, and April 27, 1981. A person buying a commodity futures contract is obligated to accept delivery of the commodity in the delivery month. This is known as taking a long position. See Smith v. Commissioner, supra at 354 (description *203 of long position). In October and November 1979, petitioner bought December 1980 contracts creating long positions which he closed by offsetting sales of December 1980 contracts without taking delivery. Petitioner maintained long positions in March 1981 contracts. He closed all of his long positions in March 1981 contracts by February 20, 1981, through offsetting sales without taking delivery on any of the contracts. He did not take delivery of any cotton relating to contracts that he bought from 1977 through 1981. He did not have a line of credit that he could use to take delivery on any of the contracts he bought. The parties agree that petitioner's cotton futures contracts trading was not a hedging activity. Petitioner realized considerable gains between November 25, 1980, and February 20, 1981, by closing long positions in March 1981, May 1981, and July 1981 contracts through offsetting sales 1 to 48 days after the date of purchase. Day trades occur where contracts for the same delivery month are bought and sold on the same day and the profit or loss on the transaction is realized on that day. Petitioner conducted 31 day trades through his Merrill Lynch account as follows: *204 Contracts
Transaction
bought &
Profit or (loss)
date
sold
realized
11/11/80
12/1/80
$ 1,268 12/4/80
3/1/81
153 12/5/80
3/1/81
428 12/5/80
7/1/81
(127)
12/22/80
5/2/81
406 1/6/81
5/2/81
(244)
1/6/81
7/2/81
456 1/7/81
5/4/81
487 1/15/81
12/2/81
356 1/20/81
3/1/81
(125)
1/21/81
12/2/81
(220)
1/22/81
12/7/81
1,370 1/27/81
12/5/81
3,065 1/29/81
3/2/81
405 1/29/81
5/1/81
265 2/6/81
12/1/81
(185)
2/9/81
12/4/81
(140)
2/12/81
3/2/81
500 2/12/81
5/2/81
740 2/17/81
5/5/81
2,500 2/18/81
7/2/81
1,150 2/19/81
3/2/81
580 2/20/81
12/5/81
2,825 3/4/81
5/6/81
(480)
3/11/81
5/6/81
2,965 3/12/81
5/2/81
(20)
3/18/81
12/10/81
(280)
3/25/81
5/2/81
(194)
4/6/81
5/5/81
(735)
4/13/81
12/5/81
1,115 4/24/81
7/2/81
(114)
In 1981 petitioner maintained long positions in March 1981, May 1981, and July 1981 contracts. A person selling a commodity futures contract is obligated to deliver the commodity in the delivery month. This is known as taking a short position. See Smith v. Commissioner, supra at 354 (description of short position). Petitioner *205 maintained short positions in December 1981 contracts in 1981. A straddle is the simultaneous holding of a long position for one delivery month and a short position in another delivery month. See Smith v. Commissioner, supra at 355 (description of a straddle). By maintaining long positions in March 1981, May 1981, and July 1981 contracts and short positions in December 1981 contracts, petitioner was in a generally straddled position at all times. Petitioner entered into the following straddles: Transaction
Contracts
Contracts
date bought sold 10/15/80
5/1/81
12/1/81
12/1/80
5/2/81
12/2/81
12/10/80
3/1/81
12/1/81
12/10/80
5/1/81
12/1/81
12/17/80
3/4/81
12/4/81
12/29/80
7/3/81
12/3/81
12/29/80
7/2/81
12/2/81
1/6/81
5/4/81
12/4/81
1/15/81
3/1/81
12/2/81
1/23/81
3/2/81
12/2/81
2/6/81
5/2/81
12/2/81
3/16/81
5/5/81
12/5/81
3/18/81
5/5/81
12/5/81
3/23/81
5/3/81
12/3/81
Petitioner did not have an inventory of cotton at the end of 1980. He had no inventory of cotton in 1981 other than 121 bales that he obtained from Anse Babers (Babers' cotton) described below. He did not buy or sell any *206 cotton in 1981 other than Babers' cotton which he sold to P & P Cotton Co. Petitioner did not have any contractual obligations to sell cotton in 1981. He engaged in no futures transactions other than cotton. He did not have hedging losses from his cotton futures transactions in 1981. At times, petitioner was forced to liquidate his positions because the market went against his position. 3. Babers' Cotton
Petitioner had an office in the Gober Gin in Gober, Texas, from the fall of 1980 through the spring of 1981. Anse Babers (Babers) operated the Gober Gin in 1981. Sometime before March 10, 1981, petitioner orally agreed to buy 121 bales of cotton from Babers. Petitioner sold the cotton for $ 34,690.64 on March 10, 1981, to P & P Cotton Co. without Babers' knowledge. Petitioner deposited the $ 34,690.64 payment from P & P Cotton Co. in his bank account. Petitioner gave Babers a $ 39,235.25 check on April 16, 1981. The check was not honored because petitioner had insufficient funds in his account. Petitioner vacated his office at the Gober Gin after his check to Babers was dishonored. Petitioner's father gave Babers $ 7,540 as partial payment for Babers' cotton. *207 Babers filed a lawsuit against petitioner for payment of petitioner's April 16, 1981, check. A judgment for Babers was entered on April 2, 1982, for $ 39,235.25, less $ 7,540 for petitioner's father's partial payment, plus $ 15,000 exemplary damages for fraud and $ 1,816.04 in prejudgment interest. The judgment states in part: After presentation of the evidence and arguments of counsel the Court found as follows: (1) that the Defendant, J. D. Fortner, represented to the Plaintiff, Anse Babers, that a check in the amount of $ 39,235.25, which J. D. Fortner gave to Anse Babers for payment for cotton which J. D. Fortner had purchased from Anse Babers would be honored on April 26, 1981, when that check was presented to the bank and that when J. D. Fortner sold the cotton that he obtained from the Plaintiff he would apply all of the monies received from said sale to the payment of the $ 39,235.25 indebtedness; (2) that these representations were material representation and were false; (3) that the Defendant did not apply the monies to the indebtedness as represented; (4) that the check given to the Plaintiff by the Defendant was not honored by the bank and payment was refused for *208 the reason that the Defendant had insufficient funds on deposit at the bank; (5) that the Plaintiff was not aware of the falsity of this representation and was induced by this representation to part with the cotton and with title to the cotton; and (6) that Plaintiff relied upon the false representation and was induced to part with the cotton; (7) that the Defendant, J. D. Fortner, is entitled to an offset in the sum of $ 7,540.00; (8) that the fraudulent acts of the Defendant were willful, intentional and done with malice and that the Plaintiff is entitled to exemplary damages in the sum of $ 15,000.00; (9) that the Plaintiff is entitled to recover pre-judgment interest at the rate of 6% per annum in the sum of $ 1,816.04.
As of the time of trial in this case, petitioner had not paid any portion of the judgment. 4. Income Tax Return
Petitioner filed his 1981, 1982, and 1983 Federal income tax returns late on May 13, 1985, after respondent's agents asked him why he had not filed them. Robin Rushlo (Rushlo), an accountant, prepared those returns. Petitioner earned wages from Louis Delhomme Marine Co. of $ 30,550 in 1981, $ 69,143 in 1982, and $ 52,920 in 1983, which *209 were reported on Forms W-2 that he received before his income tax returns were due for those years. He claimed itemized deductions on his 1981, 1982, and 1983 returns. He had records on which to base those deductions before the returns were due. Petitioner reported income and deductions from his sole proprietorship, Fortner Cotton Co. on Schedule C of his 1981 return. He claimed a $ 74,000 ordinary loss on Schedule C of his 1981 return. An attachment to Schedule C for 1981 stated "hedging losses" with no further explanation. He claimed net operating loss carryovers from 1981 of $ 61,238 to 1982 and $ 18,090 to 1983. Petitioner did not report any gross receipts on Schedule C of his 1981 return including the $ 34,690.64 he received from P & P Cotton Co. for Babers' cotton. Petitioner and his accountant estimated his cotton futures trading losses from canceled checks that were kept at petitioner's bank. Petitioner could have obtained the canceled checks before the due dates of the return but did not. OPINION 1. Character of Losses From Cotton Futures Contracts Trading
Petitioner deducted $ 74,000 on his 1981 return as an ordinary loss from trading cotton futures contracts. *210 Respondent determined that petitioner's cotton futures contracts were capital assets and the losses from their disposition were capital losses. Petitioner relies on the inventory exception in section 1221(1), which provides that capital assets do not include: Stock in trade of the taxpayer or other property of a kind which would properly be included in the inventory of the taxpayer if on hand at the close of the taxable year, or property held by the taxpayer primarily for sale to customers in the ordinary course of his trade or business.
Petitioner argues that his cotton futures contracts were not capital assets because he traded them as an integral part of an inventory purchase system, and that the futures contracts were a source of cotton supply for his cotton business. Petitioner argues that under Arkansas Best Corp. v. Commissioner, 485 U.S. 212, 220-221 (1988), and Corn Products Refining Co. v. Commissioner, 350 U.S. 46, 51 (1955), hedging transactions which are an integral part of a business' inventory-purchase system are included in the taxpayer's inventory. Respondent concedes that if petitioner's futures *211 contracts are surrogates for inventory and not held for speculation, the contracts are not capital assets because they are included in the inventory exclusion of section 1221(1). Petitioner had no cotton inventory, contracts to sell cotton, or line of credit to take delivery of cotton during the years in issue. He opened and closed long and short March 1981, May 1981, and July 1981 contracts after holding them for only short periods without ever taking delivery. He had significant day trade activity which is inconsistent with his claimed strategy of buying long futures to hold until delivery. See Day v. United States, 734 F.2d 375, 376-377 (8th Cir. 1984) (long and short positions opened and closed throughout the year and positions held open for only short periods indicate speculation). Petitioner was also generally in a straddled position during 1981. Petitioner testified that he intended to take delivery under his long futures contracts. However, circumstantial evidence suggests the contrary. Petitioner testified that he had never taken delivery under a futures contract since forming Fortner Cotton Co. He did not have any contractual obligations *212 to sell cotton. His sole cotton transaction was Babers' cotton sale. We are not convinced that the character of petitioner's entire futures trading, involving 550 contracts representing 55,000 bales of cotton, was transformed from speculation to an inventory purchase system by Babers' cotton transaction, consisting of 121 bales. In Muldrow v. Commissioner, 38 T.C. 907 (1962), we held that cotton futures contracts were capital assets where the taxpayers failed to prove that their transactions were not speculation in the cotton market. Here, petitioner has failed to carry his burden of proving that the futures transactions were surrogates for cotton or a source of supply of cotton. We conclude that petitioner's cotton futures contracts trading was not for inventory purposes under section 1221(a). Accordingly, we sustain respondent's determination that the losses from petitioner's trading activity of cotton futures contracts are capital losses. 2. Net Operating Loss Carryforward Under Section 1211
Petitioner claimed net operating losses of $ 61,238 for 1982 and $ 18,090 for 1983 from his cotton futures contracts trading in 1981. Net operating *213 losses may be applied against income from certain other years. Sec. 172. Net capital loss can offset ordinary income up to $ 3,000 in a single taxable year. Sec. 1211(b). The excess of the net capital loss may be carried forward to future years. Sec. 1212(b). Petitioner argues that he is entitled to more than a $ 3,000 carryforward because section 1211 does not limit his carryforward losses since they are ordinary losses. However, we have decided above that petitioner's 1981 cotton futures trading losses were capital losses. Accordingly, we sustain respondent's determination that petitioner may only deduct $ 3,000 in capital losses from 1981 in 1982 and $ 3,000 in 1983. 3. Petitioner Not Entitled To Deduct $ 34,691 as Cost of Goods Sold
The parties agree that petitioner sold Babers' cotton to P & P Cotton Co. without Babers' knowledge and that petitioner received $ 34,690.64 that he deposited in his Merrill Lynch account. They disagree about the terms of the agreement between petitioner and Babers, and whether Babers was paid. Respondent determined that petitioner may deduct $ 7,540 as the cost of goods sold based on the $ 7,540 payment that petitioner's father *214 gave Babers. Petitioner contends that he may deduct $ 34,691 for the cost of goods sold in 1981 for his cotton purchase from Babers. Petitioner argues that he had two separate transactions with Babers. First, he contends that he sold Babers' cotton, and paid Babers for the cotton with an interest in commodity futures contracts. Second, petitioner asserts that Babers later wanted to liquidate that futures contracts interest, so petitioner gave Babers a $ 39,235.25 check from an account with insufficient funds. Petitioner asserts that Babers' lawsuit for a dishonored check rather than for cotton sales proceeds shows that the check was not for cotton sales. Petitioner contends that he paid Babers when he deposited the funds from the P & P Cotton Co. sale in petitioner's Merrill Lynch account. Petitioner also argues that he reported the cotton sale on his 1981 return by accounting for Babers' share of the loss, thereby reducing his total losses from futures trading. However, there is nothing on the return which corroborates petitioner's explanation. Babers testified that petitioner offered to buy 121 bales of cotton for 70 cents per pound and Babers agreed to it, that he never *215 agreed to accept an interest in petitioner's cotton futures positions for his portion of the proceeds from the cotton sale, and that he has never been paid for his cotton except for $ 7,540. Petitioner asserts that the memo on the $ 39,235.25 check that he wrote to Gober Cotton Co. stated "121 B/C, APP TO MAY CONT WITH REPLACES 1 1/16" is proof of his version. However, Babers testified that he understood the memo to mean that it was for the 121 bales of cotton, but that he did not know what the rest of it meant. In addition, Babers had a document which he testified shows he thought he was going to be paid about $ 40,000 less costs of sale and warehousing charges. Babers said his notations on the back of the P & P Cotton Co. documents shows that he expected to be paid 70 cents per pound less transaction costs. Babers wrote: $ 31,174 26,603 57,777 .70 40,443.90 He said that it shows that he expected to be paid $ 40,443.90 for 57,777 pounds of cotton at 70 cents per pound, less costs. Petitioner's argument that Babers' lawsuit shows that the $ 39,235 check was not for cotton is without merit because the court in that case, after a hearing, filed a judgment which states *216 that the $ 39,235.25 check was to be payment for the cotton. Petitioner's credibility is not beyond reproach. For example, he reported no gains or losses from cotton futures trading activity on his 1980 return. However, he traded cotton futures contracts in 1980. He testified that he had cotton inventory in 1980 but admitted that he did not report the inventory on his 1980 return. He testified that he was a cotton merchant until April 1981 when he went into sales. However, he listed his occupation on his 1981 return as a commodity trader. He argues that he was a cotton merchant in 1982. However, he listed his occupation on his 1982 return as cotton trader. Petitioner failed to report the $ 34,690.64 that P & P Cotton Co. paid him for Babers' cotton. He now argues that he accounted for it in a manner not reflected on the return, but we fail to see how he did that. We recognize that petitioner sold Babers' cotton for less than the check he wrote to Babers. However, petitioner needed cash during that period to cover margin calls. He sold Babers' cotton on March 10, 1981, and wrote checks to Merrill Lynch totaling more than $ 245,000 from March 13 to April 6, 1981. In light *217 of petitioner's failure to provide documents supporting his claim that he and Babers had two transactions (a cotton sale and a cotton futures investment) and failure to report these transactions in his 1981 tax returns, and because his severe cash needs reasonably explain why he might have sold Babers' cotton for less than he agreed to pay Babers, we reject petitioner's version of the events with Babers. We are not convinced that petitioner paid Babers for the 121 bales of cotton except for the $ 7,540 that petitioner's father paid Babers. Thus, we conclude that petitioner's cost of goods sold deduction is limited to $ 7,540 as determined by respondent. 4. Additions To Tax
a. Failure To Timely File Under Section 6651(a)
Petitioner filed his returns for 1981, 1982, and 1983 on May 31, 1985. A taxpayer is liable for an addition to tax for failing to timely file returns unless he shows that the failure was due to reasonable cause and not due to willful neglect. Sec. 6651(a); Baldwin v. Commissioner, 84 T.C. 859, 871 (1985). Petitioner argues that he had reasonable cause because Babers and Merrill Lynch refused to give him his records. *218 We disagree. Petitioner possessed all of the information regarding his wages and itemized deductions to prepare his returns before they were due, and he could have estimated his cotton futures contracts trading losses from canceled checks that were available before the due dates of his returns. See Electric & Neon, Inc. v. Commissioner, 56 T.C. 1324, 1343 (1971), affd. 496 F.2d 876 (5th Cir. 1974) (lack of precise data which taxpayer should be able to estimate with reasonable accuracy not reasonable cause for substantial filing delay). We note that petitioner filed his returns only after respondent's agents contacted him. We sustain respondent's determination that petitioner is liable for additions to tax under section 6651(a) for 1981, 1982, and 1983. b. Negligence Under Section 6653(a)(1) and (2)
Respondent determined that petitioner is liable for additions to tax under section 6653(a)(1) and (2) for negligence for 1981, 1982, and 1983. Section 6653(a)(1) imposes an addition to tax equal to 5 percent of the underpayment of tax if any part of the underpayment is due to negligence or intentional disregard of rules *219 and regulations. Section 6653(a)(2) imposes an additional liability of 50 percent of the interest due on the underpayment of tax attributable to negligence or intentional disregard of rules and regulations. Petitioner bears the burden of proving that respondent's determination that he was negligent or intentionally disregarded the rules and regulations for each of the years in issue is erroneous. Warrensburg Board & Paper Corp. v. Commissioner, 77 T.C. 1107, 1112 (1981); Bixby v. Commissioner, 58 T.C. 757, 791-792 (1972). For purposes of these sections, "'Negligence is lack of due care or failure to do what a reasonable and ordinarily prudent person would do under the circumstances.'" Neely v. Commissioner, 85 T.C. 934, 947 (1985) (quoting Marcello v. Commissioner, 380 F.2d 499, 506 (5th Cir. 1967), affg. in part and remanding in part 43 T.C. 168 (1964) and T.C. Memo. 1964-299). Petitioner argues that he is not liable for the negligence additions to tax because he was confused and because his 1981 return *220 was prepared by an accountant and former Internal Revenue Service agent. As a general rule, the duty of filing accurate returns cannot be avoided by placing responsibility on a tax return preparer. Pritchett v. Commissioner, 63 T.C. 149, 174-175 (1974); Enoch v. Commissioner, 57 T.C. 781, 802 (1972). However, good faith reliance on the advice of counsel or a qualified accountant can, under certain circumstances, be a defense to the addition to tax for negligence. Pessin v. Commissioner, 59 T.C. 473, 489 (1972); Conlorez Corp. v. Commissioner, 51 T.C. 467, 475 (1968). Petitioner has not convinced us that his reliance on the accountant was in good faith. His only testimony about Rushlo, the accountant who prepared his returns, was that Rushlo estimated petitioner's losses without actual trading records by using bank records and that Rushlo used a computer. He also contends that he was advised by accountants at McClanahan & Homes that his commodity contracts losses for 1977 through 1980 were ordinary losses. Neither Rushlo nor anyone from McClanahan & Holmes *221 testified. Petitioner's description of the advice he received is vague. In addition, we do not know what information petitioner gave to his accountants upon whom he purports to rely. We have held taxpayers liable for additions to tax for negligence when they argued reliance on an attorney, accountant, tax adviser, or tax return preparer where there was no showing of the information that the taxpayer gave to the adviser. Enoch v. Commissioner, supra at 803; Lester Lumber Co. v. Commissioner, 14 T.C. 255, 263 (1950). In light of all of the above, we are not convinced that petitioner exercised good faith reliance on experts. Finally, we note that taxpayers have a statutory duty under section 6072(a) to timely file their income tax returns and breach of this duty is sufficient evidence of negligence. Emmons v. Commissioner, 92 T.C. 342, 349 (1989), affd. 898 F.2d 50 (5th Cir. 1990). We sustain respondent's determination that petitioner is liable for additions to tax for negligence under section 6653(a)(1) and (2) for 1981, 1982, and 1983. c. Substantial *222 Understatement Under Section 6661
Respondent determined that petitioner is liable for additions to tax under section 6661 for substantial understatement of income tax for 1982. Section 6661 authorizes an addition to tax when there is a substantial understatement of income tax in a taxable year. Sec. 6661(a). The addition to tax is equal to 25 percent of the amount of any underpayment attributable to the substantial understatement. Sec. 6661(a). A substantial understatement exists if in any year the amount of the understatement exceeds the greater of 10 percent of the amount required to be shown on the return or $ 5,000. Sec. 6661(b)(1). An understatement, for purposes of this addition to tax, is the amount by which the amount required to be shown on the return exceeds the amount actually shown on the return. Sec. 6661(b)(2); Tweeddale v. Commissioner, 92 T.C. 501, 523 (1989); Woods v. Commissioner, 91 T.C. 88 (1988). If the taxpayer has substantial authority for his tax treatment of any item on the return, the understatement is reduced by the amount attributable thereto. Sec. 6661(b)(2)(B)(i). Similarly, the *223 amount of the understatement is reduced for any item adequately disclosed on the taxpayer's return or in a statement attached to the return. Sec. 6661(b)(2)(B)(ii). Petitioner contends that Corn Products Refining Co. v. Commissioner, 350 U.S. 46 (1955), and Arkansas Best Corp. v. Commissioner, 485 U.S. 212 (1988), provide substantial authority for his position. However, "an authority is of little relevance if it is materially distinguishable on its facts from the facts of the case at issue." Antonides v. Commissioner, 91 T.C. 686, 702-703 (1988), affd. 893 F.2d 656 (4th Cir. 1990). Corn Products and Arkansas Best apply to hedging transactions that are an integral part of a business' inventory purchase system. Petitioner did not have such a system; his cotton futures contracts trading activity was speculation. Thus, these cases are not substantial authority for petitioner's position. Petitioner also contends that he is not liable for additions to tax under section 6661 because he adequately disclosed his losses. Disclosure is adequate if the return *224 provides sufficient information to enable respondent to identify the potential controversy involved. Schirmer v. Commissioner, 89 T.C. 277, 285-286 (1987) (listing of claimed farm income, expenses, depreciation, and amortization insufficient to place the Internal Revenue Service on notice of profit motive controversy). Petitioner's 1982 substantial understatement resulted from his disallowed net operating loss carryover from 1981, which in turn is due to our rejection of his claimed ordinary loss for cotton futures contracts trading in 1981. Petitioner's 1982 return discloses the net operating loss carryover claim from 1981, but does not mention the cotton futures contracts trading. Petitioner's Schedule C for 1981 has an attachment that states "hedging losses" but provides no further explanation. Such information is insufficient to enable respondent to identify the potential controversy involved here, that is, whether his claimed cotton futures contracts trading activity was a surrogate for inventory under Arkansas Best. We do not believe this constitutes sufficient information to identify the potential controversy. This is especially true *225 since petitioner admitted that he was not hedging. Thus, the disclosure was not only inadequate, but also not true. Finally, petitioner argues that he had reasonable cause for the understatement and acted in good faith. The Secretary or his delegate can waive the additions to tax under section 6661 when the taxpayer shows that there was reasonable cause for the understatement and that the taxpayer acted in good faith. Sec. 6661(c). The Court may review respondent's refusal to waive the addition by applying an abuse of discretion standard. Mailman v. Commissioner, 91 T.C. 1079, 1084 (1988). Petitioner has not shown that there was an abuse of discretion by respondent in not finding reasonable cause for the understatement and good faith by petitioner. Accordingly, respondent's determination that petitioner is liable for additions to tax under section 6661 for 1982 is sustained. To reflect the foregoing and concessions, Decision will be entered under Rule 155. Footnotes
1. The notice of deficiency states that the additions to tax for negligence are made under sec. 6653(a)(1)(A) and (B); however, sec. 6653(a)(1) and (2)↩ applies to the years in issue, as indicated in respondent's brief.
2. Fifty percent of the interest due on the underpayment due to negligence.↩